City of Monmouth, et al., Plaintiffs-Appellees, v. William John Payes, Jr., Director of the Department of Public Works and Buildings of the State of Illinois, et al., Defendants-Appellants.

Gen. No. 11,672.

Second District, First Division.

January 18, 1963.

Rehearing denied and opinion modified
February 19, 1963.

33

William G. Clark, Attorney General, of Springfield (Lee D. Martin, Assistant Attorney General, of counsel), for appellants.

G. Durbin Ranney, David J. Shanks, and R. P. Lamoreaux, William M. Bardens, and Theodore L. Stansell, all of Monmouth, and Hugh J. Graham, Jr., of Springfield, for appellees.

DOVE, P. J.

On June 19, 1962 a three count complaint was filed in the Circuit Court of Warren County. The plaintiffs are the City of Monmouth and nineteen other cities and towns in Illinois, the County of Carroll and three other counties in Illinois and three individual residents of Monmouth. The individual plaintiffs are Allan A. Walters, Mayor of the City of Monmouth, Vinton J. Mason and Richard Hickerson. The defendants are William John Payes, Jr., Director of the Department of Public Works and Buildings, Robert R. Donnelly, Director of the Department of Labor and James A. Ronan, Director of the Department of Finance, all of the State of Illinois.

The complaint alleges that the plaintiffs, Mason and Walters are taxpayers and residents of the City of Monmouth; that plaintiff, Hickerson, is an employee of said City and that the plaintiff cities, towns and counties are municipal corporations empowered by statute and charged with the duty of constructing sidewalks, streets, sewers and local improvements of various types. It is then alleged that the City of Monmouth has undertaken the building and maintenance of a City Hospital and that all the plaintiffs are engaged in the employment of personnel for the construction and repair of

public works and are subject to the provisions of the "Prevailing Wage Law." (Ill Rev Stats 1961, c 48, § 39s par 1–12.)

The complaint then sets forth various provisions of this act and also a portion of the "Motor Fuel Tax Law" (Ill Rev Stats 1961, c 120, §§ 417–434), and also refers to divisions 5, 6 and 7 of Article 5 of the "Illinois Highway Code" (Ill Rev Stats 1961, c 121). It is then alleged that the purported prevailing hourly rates of wages, for the various types and crafts of workmen or mechanics in the locality affecting the plaintiffs, are substantially higher than the rates of pay employed by the plaintiffs when translated into hourly rates of pay for particular types of work; that the plaintiffs employ some persons who do both construction work and maintenance work on a monthly salary and some on an hourly basis; that by reason of steady employment and other benefits, plaintiffs are able to hire workmen and mechanics at rates of pay which are 33% to 50% less than purported prevailing hourly rates of pay for each craft or type of workmen performing labor on a particular construction job.

It is then alleged that neither the Motor Fuel Tax Law or the provisions of the Illinois Highway Code referred to in the complaint contain any provision with respect to compliance with the Prevailing Wage Act as a condition to allotment of motor fuel funds; that the effect of section 10a of the Prevailing Wage Act is to amend the Motor Fuel Tax Act by reference to its title only and by so doing conflicts with Article IV, section 13 of the Constitution of this state and is therefore void.

It is then averred that by reason of the invalidity of said section 10a of the Prevailing Wage Act plaintiffs have refused to comply with its provisions and in consequence thereof the Department of Public Works and Buildings refuses to approve necessary public works

construction projects submitted by plaintiffs and the Department of Finance of this state refuses to allocate and cause to be paid over to plaintiffs motor fuel tax funds for any public works.

The complaint then charges that defendants have withheld from plaintiffs motor fuel tax funds which should be paid to them; that defendants have refused to approve public works of the plaintiffs and have refused to allocate motor fuel tax funds therefor, and as a result thereof plaintiffs have been unable to proceed with the construction of pending essential projects affecting the public health, safety and welfare.

It is then alleged that in order to prevent irreparable injury to plaintiffs' roads, streets and highways and in order to safeguard plaintiffs' rights to motor fuel tax funds presently allocated and to such funds as may be allocable in the future, and to afford plaintiffs' officers, agents and representatives protection against possible civil and criminal action for failure to comply with said prevailing wage act during the determination of its constitutionality, a preliminary injunction restraining the enforcement of section 10a of the Prevailing Wage Act and a stay of enforcement of said act in its entirety should be granted. The prayer of the complaint was for the issuance of a preliminary injunction and for a declaratory judgment finding and determining that all the provisions of the Prevailing Wage Law are unconstitutional and invalid.

Upon notice and a hearing the chancellor on July 9, 1962, granted the motion of the plaintiffs for a temporary injunction and entered an order directing the clerk to issue a temporary injunction, without bond restraining Robert H. Donnelly, Director of the Department of Labor, from enforcing any of the provisions of the Prevailing Wage Law against any of the plaintiffs who have not previously complied with this law. The order also restrained Wm. John Payes, Jr., Director of Public Works and Buildings, from with-

36

holding approval of public works projects of any of the plaintiffs by reason of their noncompliance with said act. James A. Ronan, as Director of the Department of Finance, was enjoined from refusing to allocate motor fuel tax funds to any of the plaintiffs by reason of their failure to comply with said law and also from withholding "approval of requests for motor fuel tax funds and disbursements of motor fuel tax funds to plaintiffs who have not complied with said law, (a) for approved maintenance work, as defined in said Prevailing Wage Law, and (b) for approved construction work, as defined in said law, provided that the public body receiving such funds shall proceed with the work only when sufficient funds are available to pay increased wages if such are finally determined to be due workmen on said construction project."

Defendants' motion to dissolve this preliminary injunction was heard and denied and this appeal followed.

The complaint alleges that plaintiffs can obtain workers to do the jobs of public work construction at rates of pay from 33% to 50% less than the prevailing wage and for that reason they refused to obey or comply with the provisions of the Prevailing Wage Law. Their theory is that the enforcement of this law imposes a burden on local property by reason of its applicability to all public works whether constructed with local money or state money. Counsel insists that the allegations of the complaint raise a fair question of the constitutionality of the act; that the plaintiffs have a sufficient interest in its enforcement to raise that question and in cases of this kind the chancellor had a wide discretion to preserve the status quo during the pendency of the litigation and that there is nothing in this record which indicates any abuse of discretion.

Counsel for appellants argue that the allegations of the complaint do not raise any fairly debatable constitutional question; that a grant of motor fuel tax funds by the state to political subdivisions of the state

37

is a gift or bounty from the state and plaintiffs have no property interest in, or vested right to, such funds. It is also insisted that the several plaintiff municipalities are agents of the state and have no legal standing to bring a suit of this character and it is argued that the temporary injunction in this case does not preserve the status quo but compels the release of public funds to political subdivisions of the State in violation of the provisions of a valid Prevailing Wage Act.

The first Prevailing Wage Act in this State was enacted in 1931 and was declared unconstitutional in Mayhew v. Nelson, 346 Ill 381, 178 NE 921. The second Prevailing Wage Act was invalidated in 1940 in Reid v. Smith, 375 Ill 147, 30 NE2d 908. In 1941 the present act was enacted and in 1951, sections 2, 4, 5, 6, 8 and 9 were amended. (Bradley v. Casey, 415 Ill 576, 114 NE 2d 681.)

In sustaining the 1941 act as so amended the Supreme Court in Bradley v. Casey, supra, after setting forth the substance of the several sections of the Act and calling attention to the Mayhew and Reid cases, said: (p 581) "It therefore appears that the present act, containing many changes from the former ones, is a serious declaration of public policy by the elected representatives of the people of this state, with an evident attempt to cure the law of its former alleged evils. The objection in respect to certain provisions embraced in the act but which are not expressed in the title was not treated in either of the aforesaid opinions. We have carefully studied the act and we believe it is a fair conclusion to state that, when the entire context is considered, it appears manifest that the legislature intended the act to apply only to contractors under contracts for public works."

The court then went on to say (p 582) that the language of the title is clear and unmistakable and did not embrace persons directly employed by the state or other

38

public bodies and continued, "We, therefore, hold that such provisions of the act which heretofore might have been construed as requiring payment by public bodies of prevailing per diem wages in direct employment of workmen in construction of public works are invalid as being within the prohibition of section 13 of Article 4 of our State Constitution." The court then concluded: (p 584) "Upon re-examination of the Mayhew and Reid cases, and cases from other jurisdictions holding to the contrary, we are now of the opinion that it is within the power of the General Assembly of this State to enact into law, (if within constitutional bounds) that those persons employed under public works contracts paid for from public funds shall receive no less than the prevailing rate of per diem wages paid in the particular locality to various crafts and types of work. The legislature has the power to pass any law not expressly prohibited by the constitution and it possesses every power not delegated to some other department or to the Federal Government and not denied to it by the Federal or State Constitution."

The Bradley case, decided on September 24, 1953, interpreted and sustained the Prevailing Wage Act of 1941, as amended, except the 1951 amendment to Section 2 which defined wages under a collecting bargaining agreement as the prevailing rate of wages in a given locality. The court held that this section delegated a discretionary power to private parties and tended to be too restrictive and discriminating in defining that to be a fact which is not a fact.

After the Bradley case was decided, and in 1957, the title to the act was amended, and in 1961, section 10a and the first paragraph of section 11 were added. Section 11 now excepts Federal construction projects but provides that no other public works project shall be instituted unless the provisions of this act have been complied with. The change in title, made the provi-

sions of this act applicable to direct employment by public bodies as distinguished from Public Works let by contract to private contractors, and section 10a provided that the state should not approve any public works project, for which such approval is required, until the public body requesting such approval has filed a certificate of full compliance with this Act. This section also provided that no motor fuel tax funds shall be allocated to any public body until such certificate of compliance with this act is filed.

██ In the instant case the temporary injunction issued after notice and a hearing. It did not finally conclude the rights of the parties. The merits of this controversy are not brought before this court by this appeal. If the chancellor felt that the status quo should be preserved for further proceedings and research and that the pleadings raised a debatable question of law of first impression, in the absence of a showing that the delay, by reason of the temporary injunction, would occasion serious injury, this court should not interfere. (Shatz v. Paul, 7 Ill App2d 223, 234, 235, 129 NE2d 348.)

█ We recognize that important public questions are involved in this litigation and are satisfied that the individual plaintiffs have the right, as taxpayers, to institute and maintain a suit of this character. (Reid v. Smith, 375 Ill 147, 149, 30 NE2d 908.) It has also been held, that public officials may question the constitutionality of a state statute. (People v. Johnson, 26 Ill2d 268, 271, 186 NE2d 346, 347.)

██ A temporary injunction is granted not to determine any controverted rights or to take property out of the possession of one party and put it into the possession of another but is granted only to preserve the subject or object of the controversy in its then existing condition. (21 ILP Injunctions, sec 4.) Upon this appeal the validity of the Prevailing Wage Law is not in issue. Its validity, other than as herein indicated,

has been determined but this record does present for our review an order which restrains (a) the Director of the Department of Labor of this State from enforcing against any of the plaintiffs any of the provisions of the Prevailing Wage Law; (b) the Director of Public Works and Buildings of this state from withholding approval of Public Works projects of any of the plaintiffs by reason of their noncompliance with the provisions of said act; (c) the Director of the Department of Finance of this State from refusing to allocate motor fuel tax funds to any of the plaintiffs by reason of their failure to comply with said law, and (d) the Director of the Department of Finance of this State from withholding approval of requests for, and disbursement of, motor fuel tax funds to plaintiffs.

Compliance with this order compels the State of Illinois to release and pay over to plaintiff political subdivisions, motor fuel tax funds which are being withheld from these plaintiffs by reason of the provisions of section 10a of the present law. As long as this order is in effect public funds which the several state officers are directed to withhold until section 10a of the present law is complied with, are paid to the political subdivisions exactly as they would be after the invalidity of this section had been adjudicated. If section 10a is valid these political subdivisions are entitled to a part of the motor fuel tax funds only upon compliance with said section.

According to the allegations of the complaint the several plaintiff political subdivisions are able to employ public works construction workers at wages substantially less than the prevailing wage. As long as this temporary injunction is in effect it may continue to do so and at the same time collect from the state motor fuel tax funds.

With either the wisdom or propriety of the Prevailing Wage Law we are not concerned. Our Supreme Court has held that the General Assembly of this state

41

had the power to enact into law that persons employed on public works contracts, paid for from public funds, should receive no less than the prevailing rate of per diem wages paid in the particular locality to various crafts and types of work. The General Assembly did so and the Supreme Court has sustained the law which the General Assembly enacted. Simply because the plaintiffs by ignoring the provisions of a law are able to construct public works with the expenditure of less money than they would if they complied with the law, does not entitle them to the relief they have obtained by the issuance of this temporary writ.

The order appealed from denying defendants' motion to dissolve the temporary injunction herein, is reversed and this cause remanded to the Circuit Court of Warren County with directions to sustain defendants' motion to dissolve the temporary injunction and to dissolve the temporary injunction issued on July 9, 1962.

Reversed and remanded with directions.

McNEAL, P. J. and SMITH, J., concur.