Marcelle Keeshin, Roxanne Louise Keeshin, a Minor, by Marcelle Keeshin, Her Mother and Next Friend, and Scott Avery Keeshin, a Minor, by Marcelle Keeshin, His Mother and Next Friend, Plaintiffs-Appellees, v. Allen Schultz, Ida Schultz, Nathan Sugarman, Goldie Sugarman, and Canadian Ace Brewing Company, an Illinois Corporation, Seneca Hotel Company, a Partnership, and American National Bank & Trust Company of Chicago, Defendants, Nathan Sugarman, Individually, and Nathan Sugarman and Goldie Sugarman, Co-trustees, Appellants.

Gen. Nos. 54,211, 54,338. (Consolidated.)

First District, Fourth Division.

September 9, 1970.

Moses Levitan and Mayer, Friedlich, Spiess, Tierney, Brown & Platt, of Chicago (George V. Borbrinskoy, Jr., Herbert A. Friedlich and Robert F. Finke, of counsel), for appellants.

Don H. Reuben and John J. Sullivan, of Chicago (Michael W. Coffield, of counsel), for appellees.

MR. JUSTICE ENGLISH delivered the opinion of the court.

This is a consolidated interlocutory appeal, pursuant to Supreme Court Rule 307(a)(1), from two orders granting preliminary injunctions restraining payment by the American National Bank & Trust Company, as escrow agent, to two trusts (hereafter the "Sugarman Trusts"). Previously, on motion of plaintiffs Roxanne Louise and Scott Avery Keeshin, the court had entered summary judgment in their favor and against defendant Nathan Sugarman on the issue of liability for breach of fiduciary duties with respect to two trusts (hereafter the "Keeshin Trusts") of which those plaintiffs are beneficiaries.

A similar motion by plaintiff Marcelle Keeshin had been denied.

The following statement of facts is taken from appellants' brief, with only irrelevant or argumentative comment deleted:

"(a) *Background of the 1961 Settlement.* Alex Greenberg died in December, 1955. The principal assets of his estate consisted of controlling shares of stock in two corporations, Seneca Hotel Company and Canadian Ace Brewing Company.* Alex's daughter, Ida Schultz, and his sons-in-law, Allen Schultz (an attorney) and Nathan Sugarman (a professor of chemistry at the University of Chicago), were named in the will as co-executors and as co-trustees of three separate testamentary trusts each of which being for the primary benefit of one of Alex's three daughters, Goldie Sugarman, Ida Schultz and Marcelle Keeshin. Among its other provisions, the will provided that majority decision among the three co-executors or co-trustees should control.

"Almost from the beginning of administration, conflicts arose between Ida and Allen Schultz, on the one hand, and Nathan Sugarman, on the other. These conflicts led to the proceedings for appointment of independent counsel for Nathan Sugarman which are described in the opinion of this Court in

---

* The estate's shares of Seneca stock were part of a voting trust. The estate's holdings of Canadian Ace stock consisted of 750 shares of the 1750 outstanding. During his lifetime, in 1945, Alex Greenberg had established two trusts for the primary benefit respectively of Goldie Sugarman and Ida Schultz, the principal asset of each trust being 150 shares of Canadian Ace. A similar trust was created by Alex's wife Esther for the primary benefit of Marcelle Keeshin. Nathan Sugarman and Allen Schultz were the two cotrustees of each of the three living trusts.

In re Greenberg's Estate, 15 Ill App2d 414. As set forth in that opinion independent representation was ultimately denied by this Court.

"Thereafter there was intensification of the conflict between Nathan Sugarman and his co-executors relating to a variety of issues, two of which are directly relevant to the present litigation. Nathan Sugarman desired that Canadian Ace begin to pay dividends in view of its increasing profitability. Allen and Ida Schultz (who were two of the three directors of Canadian Ace, the third director not being a party to the present proceeding) insisted that all profits be reinvested in the brewery, and in this policy they were vigorously supported by Marcelle Keeshin and her husband, Sanford, who, after the death of Alex Greenberg, had become an officer and second highest salaried employee of Canadian Ace. Further conflict arose over the question of whether Alex Greenberg's estate had a valid claim against Sanford Keeshin for a sum in excess of $49,000 representing, in Professor Sugarman's opinion, a loan by Alex Greenberg to Sanford Keeshin. Marcelle and Sanford Keeshin joined Ida and Allen Schultz in resisting this claim.

"Shortly before January, 1961, . . . litigation was commenced by certain owners of Seneca Hotel stock concerning the consequences attendant upon termination of the voting trust into which a controlling block of Seneca stock had been placed. On January 10, 1961, a proposal was made to Nathan Sugarman on behalf of Allen Schultz whereby the three testamentary trusts would purchase all Seneca Hotel stock not owned by the Greenberg family. Nathan Sugarman . . . made a counterproposal whose essence was that the Sugarman trusts sell their shares in Canadian Ace and Seneca Hotel.

463

"(b) *1961 Settlement*. Nathan Sugarman's counter-proposal led to a meeting on January 13, 1961, attended by Nathan Sugarman, Allen Schultz, Louis Biro (a partner of Allen Schultz) and Theodore and Moses Levitan (attorneys representing Nathan Sugarman). At that meeting, an agreement was reached whereby the Sugarman family would be enabled to sever its financial involvement with the Schultz and Keeshin families.

"The salient provisions of that agreement were as follows. The 400 shares of Canadian Ace stock owned by the Sugarman Trusts and the 200 shares owned by Goldie Sugarman, individually, would be sold to Canadian Ace for the aggregate price of $1,000,000 payable over 15 years. The Seneca Hotel shares owned by the Goldie Sugarman Testamentary Trust would be sold to Canadian Ace for $332,-550 payable over 15 years, although it was subsequently determined that such a purchase might exceed Canadian Ace's corporate powers and, therefore, Allen Schultz, individually, and the Keeshin and Schultz Testamentary Trusts were substituted as purchasers. All claims of Alex Greenberg's estate against Sanford Keeshin would be released. Nathan Sugarman would receive $35,000 for services as co-executor . . . . Ida and Allen Schultz would resign as co-trustees of the Goldie Sugarman Testamentary Trust and Allen Schultz would resign as co-trustee of the Goldie Sugarman Living Trust. Nathan Sugarman would resign as co-trustee of each of the four Keeshin and Schultz Trusts. The adult beneficiaries of the six trusts involved, and their spouses, would execute, on their own behalf and that of their descendants, releases and indemnification agreements to the resigning co-trustees.

"The foregoing agreement was implemented in March and May of 1961. Pursuant to an escrow

agreement dated May 26, 1961, the periodic payments for the Canadian Ace and Seneca Hotel stock were made to the American National Bank, as escrow agent, which would deposit the moneys to the accounts of the Sugarman Trusts.

"(c) *The Present Litigation.* Six years later, in May, 1967, after Canadian Ace had suffered a decline in fortunes, a complaint was filed on behalf of Marcelle Keeshin and her two children, then both minors, Roxanne Keeshin and Scott Avery Keeshin. The complaint sought to set aside the 1961 settlement. In January, 1969, after Roxanne Keeshin had attained her majority, additional counsel filed an appearance in her behalf and a guardian ad litem was appointed for Scott Avery Keeshin, still a minor.

"In March, 1969, the discovery deposition of Nathan Sugarman was taken, and . . . a motion for summary judgment against Nathan Sugarman 'as to liability' . . . was filed on behalf of [Roxanne Keeshin and on behalf of Scott Avery Keeshin by his guardian ad litem.] . . . Thereafter a similar motion was filed on behalf of Marcelle Keeshin. The affidavit of Nathan Sugarman, setting forth essentially the facts contained herein, was filed in opposition to the motion.

"On June 23, 1969, the summary judgment motion of Marcelle Keeshin was denied, but that filed on behalf of Roxanne and Scott Avery Keeshin was granted as of June 13, 1969. . . . Temporary injunction orders were entered on June 13, 1969 and July 31, 1969 [re Canadian Ace and Seneca, respectively] restraining payment by the American National Bank to the Sugarman Trusts of moneys received under the 1961 Escrow Agreement.

"Appeals from the injunction orders were perfected and have been consolidated for argument herein."

We consider the following additional facts relevant to this appeal:

Plaintiffs' motion for summary judgment was based upon the grounds that:

"1. As a matter of law, defendant and co-trustee NATHAN SUGARMAN breached his fiduciary duties to plaintiffs as beneficiaries of the Marcelle Keeshin Trust and the Marcelle Greenberg Trust by the following acts:

"(a) Defendant SUGARMAN, acting as co-trustee of the Sugarman trusts and the Keeshin and Greenberg trusts, preferred his wife, defendant GOLDIE SUGARMAN, and the Sugarman trusts to the detriment of the Keeshin and Greenberg Trusts by liquidating the Sugarman holdings in Canadian Ace Brewing Company, Inc. and failing to simultaneously liquidate the Keeshin and Greenberg trust holdings in said corporation.

"(b) Defendant SUGARMAN as a matter of law violated his fiduciary obligations to the Keeshin and Greenberg trusts by subordinating their interest in Canadian Ace to the Sugarman trusts interests.

"(c) Defendant SUGARMAN failed to make any accounting to the plaintiffs as beneficiaries of the Keeshin and Greenberg trusts at any time during or subsequent to his tenure as co-trustee of said trusts and by his own admission never examined the books of said trusts or its affairs.

"2. Defendant SUGARMAN resigned as co-trustee of the Keeshin and Greenberg trusts without

466

making any final accounting and without making any assessment or inquiry as to the financial future of the trusts he abandoned."

The release agreement entered into by Marcelle Keeshin was not executed by a legal guardian on behalf of the minor beneficiaries of the Keeshin Trusts. Nor was the agreement presented to any court for approval.

Plaintiffs are contingent beneficiaries of the Sugarman testamentary trust, since the will of Alex Greenberg provides that if, prior to December, 1975, Goldie Sugarman should die without leaving issue surviving, then the Sugarman testamentary trust should be divided between the Keeshin and Schultz testamentary trusts.

The complaint contains dozens of prayers for relief. Judgments are sought not only against Nathan Sugarman, but also against the other trustees, and against Goldie Sugarman, with enforcement against the Sugarman Trusts as well as against the individual concerned. Plaintiffs also seek an accounting against the three trustee defendants, there never having been one, either at the time of the various resignations or at any other time. Another of the alternate prayers for relief, of particular importance in the context of the orders appealed from, is that which seeks to have the entire "1961 Settlement" declared null and void, the transfers of property and payments of money thereunder restored, the security for debt reconveyed, and all unperformed obligations thereunder held unenforceable.

■■ Practically all of the issues raised by the pleadings remain undecided, the only determination having been the summary judgment as to liability against Nathan Sugarman, and the merits of that judgment are not before us. The only issue which is before us is whether or not the trial court abused its discretion in issuing the preliminary injunctions in question. As stated in Simpkins v. Maras, 17 Ill App2d 238, 249, 149 NE2d 430:

467

"An application for an injunction is addressed to the conscience and sound discretion of the court, and it is not controlled by technical legal rules, and unless a reviewing court finds that the discretion has been abused, the order will not be set aside.

See, also, Aurora v. Warner Bros. Pictures Distributing Corp., 16 Ill App2d 273, 285, 147 NE2d 694.

■■ Plaintiffs contend that support for the preliminary injunctions in the instant case is to be found in the most frequently used basis for such injunctions, namely, the preservation of the status quo pending final determination on the merits of the complaint. Authorities in support of this general proposition are too numerous to require citation. It is our understanding, however, that the status quo to be maintained under that principle is "the last, actual, peaceable, uncontested status which preceded the pending controversy." See O'Brien v. Matual, 14 Ill App2d 173, 187, 144 NE2d 446, and cases there cited. During the status prior to the instant controversy, the escrow bank was making the payments which have now been enjoined, so we do not consider that the status quo doctrine, in its general outline, is applicable to this case.

■■ We do believe, however, that there is a narrower concept of status quo maintenance which is acceptable and appropriate to this case. The property and funds which were placed in escrow through implementation of the "1961 Settlement" constitute the very res which plaintiffs allege would never have come into existence had it not been for breaches of defendants' fiduciary obligations. Among other relief sought, the complaint asks the court to set aside that entire settlement by restoring the escrowed property to the trusts as they were constituted before the acts of which defendants are accused. Plaintiffs also seek an accounting of their trusts. In this situation, the court can be seen as having

468

not only the discretion but the duty, when requested, to attempt preservation of the property or fund in controversy so that ultimate success by plaintiffs may not result in a meaningless victory. By issuing its injunctions for this purpose, the court need not have decided that plaintiffs will probably be granted the basic relief they seek, although in this case an indication of the chancellor's thinking may be found in the summary judgment against Nathan Sugarman.

We conclude, therefore, that the preliminary injunctions appealed from, were issued through proper exercise of the court's discretion to maintain the property or fund in controversy pending final adjudication of the litigation. In this conclusion, we believe we are supported by the following cases, even though they employ the words "status quo," because close reading of the opinions discloses that the term refers to the status quo necessary to prevent dissipation or destruction of the res in controversy: Weingart v. Weingart, 23 Ill App2d 154, 159, 161 NE2d 714; Fishwick v. Lewis, 258 Ill App 402, 410; Seay & Thomas, Inc. v. Kerr's, Inc., 58 Ill App2d 391, 402–403, 208 NE2d 22; Forster v. Fruin & Walker Co., 170 Ill App 89; 21 ILP, Injunctions, §§ 4, 12; 42 Am Jur 2d, Injunctions, § 13; Harman v. Jones, 18 Eng Chanc Rep (4 Myline & Craig) 298, 300. See, also, City of Monmouth v. Payes, 39 Ill App2d 32, 40, 188 NE2d 48; Chicago Motor Coach Co. v. Budd, 346 Ill App 385, 389–390, 105 NE2d 140; Northern Illinois Coal Corp. v. Langmeyer, 340 Ill App 423, 429, 92 NE2d 802; Peoples Gas Light & Coke Co. v. Slattery, 287 Ill App 379, 388–389, 5 NE2d 285; Miollis v. Schneider, 77 Ill App2d 420, 425, 222 NE2d 715.

■ As mentioned above, the injunction orders recited that they were being entered "by reason of the granting of the joint motion for summary judgment." Defendants contend that the injunctions were therefore erroneously issued because a judgment against Nathan

Sugarman could not properly be satisfied out of a trust fund in which he has no beneficial interest. Plaintiffs suggest various answers in response, but, under the views which we have expressed, we find it unnecessary to decide this point. We do note, however, that the reasons stated by the trial court for the entry of its order do not limit the grounds available to a reviewing court in deciding to affirm. Miller v. Chicago Transit Authority, 78 Ill App2d 375, 381, 223 NE2d 323.

Defendants also argue that the injunctions in this case amount to equitable attachment in anticipation of a money judgment, and are therefore invalid, citing, principally, Phelps v. Foster, 18 Ill 309, 311, and Lewis v. West Side Trust & Savings Bank, 288 Ill App 271, 6 NE2d 481. We have reviewed these cases and the principle for which they stand, and do not consider them applicable to the facts of the case now before us. Nor do we consider pertinent defendants' contention that the injunctions are in violation of section 49 of the Chancery Act. Ill Rev Stats 1967, c 22, § 49.

The preliminary injunctions appealed from are affirmed.

Affirmed.

STAMOS, P. J. and DRUCKER, J., concur.