MICHAEL A. WEBB *et al.*, Plaintiffs-Appellants, *v.* PHILIP J. ROCK, President of the Illinois Senate, *et al.*, Defendants-Appellees.

Fourth District No. 15698

Opinion filed February 1, 1980.

Thomas B. Quinn, Reinnette Morin, and James A. Clark, all of Chicago, for appellants.

Gerald W. Shea, of Shea & Hett, of Berwyn, for appellee Philip J. Rock.

Lee J. Schwartz, of Chicago, for appellee William A. Redmond.

William J. Scott, Attorney General, of Springfield (Don Townsend, Assistant Attorney General, of counsel), for other appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

This appeal is from an order of the circuit court of Sangamon County refusing a request for a temporary restraining order (TRO) prohibiting

the processing or payment of State vouchers submitted by various legislators, legislative commission and committee members and their staffs for expenses incurred while attending the National Conference of State Legislatures held in San Francisco in the summer of 1979. The case started in the circuit court of Du Page County but was transferred, pursuant to a defense motion, to the circuit court of Sangamon County. For this reason and because of uncertainty in the law relating to injunctive relief, a procedural morass developed. However, we conclude that the trial court properly denied the requested relief. We affirm.

On July 27, 1979, plaintiffs, Michael Webb, Julie Smith, and Lisa Molidor, filed a petition in the circuit court of Du Page County seeking leave to file suit under "An Act in relation to suits to restrain and enjoin the disbursement of public moneys by officers of the state" (Ill. Rev. Stat. 1977, ch. 102, pars. 11-16). This legislation permits the Attorney General or, upon first obtaining leave of court, any citizen and taxpayer to sue to obtain the relief described in the title of the Act. After a hearing on August 2, 1979, leave was granted and a three-count complaint was filed seeking to prevent the processing and payment of State vouchers for the previously described expenses. The permanent relief sought was that the court (1) find and determine that certification, approval, and disbursement of the vouchers violated article VIII, sections 1(a) and 1(b), of the Illinois Constitution of 1970, (2) find and determine that "Ill. Rev. Stat., ch. 63, par. 123" is violative of article IV, section 1, of the Illinois Constitution of 1970, and (3) enjoin the processing, approval, and disbursement of the vouchers. State officers and employees who would process and pay the vouchers were made parties defendant.

The legislation, the validity of which was questioned, provided:

"The Majority and Minority Leadership of the Senate and the House of Representatives, and members of appropriate legislative committees and commissions as determined by such leadership, may, annually, attend appropriate meetings of the National Conference of State Legislatures as representatives of the General Assembly of the State of Illinois, and may pay such annual membership fee as may be required to maintain membership in such organization." Ill. Rev. Stat. 1977, ch. 63, par. 123.

Upon permitting the filing of the complaint, the court also granted plaintiffs' request for a TRO, effective for 10 days, prohibiting processing and payment of the vouchers. A hearing on the question of issuance of a preliminary injunction was set for August 9, 1979. On that date, without hearing the injunction issue, the court granted a defense motion for change of venue to Sangamon County. The order of transfer recited that because of a stipulation of record, the TRO was not extended. The stipulation was defendants' agreement that no vouchers would be

processed until the case shall "properly have come before the Presiding Judge in Sangamon County."

The first hearing in the circuit court of Sangamon County was held on August 28, 1979. After denying a defense motion for rehearing as to the granting of leave to file the original complaint, the court allowed plaintiffs' motion for leave to file an amended complaint which had been pending at the time of transfer of the case. The amended complaint named additional defendants and set forth additional facts. It also contained a request that the TRO be extended. A new motion for TRO had also been filed in Sangamon County and plaintiffs' notice for the August 28 hearing stated that motion would be heard at that time. The trial court concluded that it was ruling on a motion to extend the original TRO. It then denied plaintiffs' request for temporary relief, finding (a) the complaint showed immediate irreparable injury, (b) the balance of hardship was with plaintiffs if the order were denied, and (c) plaintiffs had no adequate remedy at law, but (d) the complaint did not demonstrate a likelihood of success on the merits. Plaintiffs appealed pursuant to Supreme Court Rule 307. 58 Ill. 2d R. 307.

Plaintiffs assert (1) the original TRO should have been extended because defendants made no showing that the restraint should have been discontinued, (2) the court improperly required a showing of likely success on the merits, and (3) in any event, likely success was shown.

Sections 3 and 3—1 of "An Act to revise the law in relation to injunction" (Ill. Rev. Stat. 1977, ch. 69, pars. 3, 3—1) provide for the issuance of preliminary injunctions and TRO's, respectively. Section 3—1 limits the duration of a TRO granted without notice to the lesser of 10 days or the time provided by the court. Such an order so entered can, *during its duration*, be extended for good cause shown for a period of another 10 days or, if the parties agree, *pendente lite*. When such an order is entered without notice, a hearing on whether a preliminary injunction is to issue is required to be set as soon as possible.

Plaintiffs' first contention is based upon *Kraft v. Solon* (1975), 32 Ill. App. 3d 557, 336 N.E.2d 577, which held that a court once granting a TRO should not vacate it absent a showing that it should not be continued. Here, regardless of whether the original TRO of August 2, 1979, was issued with notice to defendants, that order had, by its terms, expired 10 days later. The August 9 order of the Du Page court expressly stated that it was not extended. The stipulation of the parties was an agreement by defendants to forebear. That agreement expired by its terms by the time of the August 28 hearing. Thus, the question before the circuit court of Sangamon County on August 28 was not whether an existing TRO should be either dissolved or extended but whether a new one should be entered.

There is no merit to plaintiffs' theory that defendants had a burden to make any showing.

Plaintiffs' theory that the trial court erred in requiring them to make a showing of probable success is based on a series of appellate court cases holding or stating by way of dictum that probable success is not a necessary element of proof to entitle a party to obtain a preliminary injunction or TRO to preserve the status quo necessary to prevent the destruction of the *res* in controversy (*Alexander v. Standard Oil Co.* (1977), 53 Ill. App. 3d 690, 368 N.E.2d 1010; *Paddington Corp. v. Foremost Sales Promotions, Inc.* (1973), 13 Ill. App. 3d 170, 300 N.E.2d 484; *Hoffman v. Wilkins* (1971), 132 Ill. App. 2d 810, 270 N.E.2d 594; *Keeshin v. Schultz* (1970), 128 Ill. App. 2d 460, 262 N.E.2d 753; *Fishwick v. Lewis* (1930), 258 Ill. App. 402). The rationale for the rule was stated in *Keeshin* to be as follows:

> "In this situation, the court can be seen as having not only the discretion but the duty, when requested, to attempt preservation of the property or fund in controversy so that ultimate success by plaintiffs may not result in a meaningless victory. By issuing its injunctions for this purpose, the court need not have decided that plaintiffs will probably be granted the basic relief they seek, * * *." (128 Ill. App. 2d 460, 468-69, 262 N.E.2d 753, 757.)

In the instant case the *res* would be the appropriated funds to be used to pay the vouchers.

On the other hand, no supreme court case recognizing that probable success on the merits is not a necessary element to show in order to obtain interlocutory injunctive relief has been called to our attention. In *Kable Printing Co. v. Mt. Morris Bookbinders Union Local 65-B* (1976), 63 Ill. 2d 514, 349 N.E.2d 36, the supreme court held that the 10-day limitation periods of section 3—1 were not applicable to TRO's issued after proper notice and that such orders could be ordered to continue until a decision on the merits of the case was reached. The court noted the confusion resulting from the retention of section 3 after the enactment of section 3—1 and then stated:

> "It is apparent from a consideration of these two sections that a temporary restraining order issued with notice is, in its practical results, no different than a preliminary injunction issued with notice. The only difference between the two is that the latter requires the movant to show a probability of success on the merits. *To permit such a distinction is incongruous and obviously contrary to the legislature's intention in creating a system of injunctive relief. Accordingly, we hold that a temporary restraining order issued with notice and a preliminary injunction issued with notice, neither*

*of limited duration, are the same type of relief, and whether referred to under either term require a showing of the likelihood of ultimate success on the merits of the case."* (Emphasis added.) 63 Ill. 2d 514, 524, 349 N.E.2d 36, 40.

■■ The instant request for injunctive relief was heard after notice. Under *Kable Printing Co.,* plaintiff would have been required to make a showing sufficient for a preliminary injunction. That court also stated that a showing of probable success on the merits was a necessary element for obtaining a TRO under those circumstances. No mention was made for an exception when the preservation of the status quo of a fund was in issue. We need not decide here, however, whether such an exception would be recognized by the supreme court. In arguing to this court and explaining the showing it was required to make, counsel for plaintiffs stated that one of the elements necessary for it to show was "likelihood of success on the merits." When a party raises an issue for the first time on appeal, it is ordinarily deemed to have been waived. (*Snow v. Dixon* (1977), 66 Ill. 2d 443, 362 N.E.2d 1052.) Here, not only was the issue not raised in the trial court, but the party now raising the issue advised the trial court that the law was contrary to its present position. Any claim that the trial court erred in requiring plaintiffs to show likely success on the merits has been waived.

■■ ■ As plaintiffs' request for interlocutory relief was heard prior to defendants having answered, the trial court's determination of the likelihood of plaintiffs' success had to be made upon the basis of the sufficiency of the complaint to set forth a cause of action. (*Centennial Laundry Co. v. West Side Organization* (1966), 34 Ill. 2d 257, 215 N.E.2d 44.) In turn, on review, we can only base our judgment of the propriety of the trial court's determination on a consideration of the sufficiency of the complaint. (*Whitaker v. Pierce* (1976), 44 Ill. App. 3d 148, 358 N.E.2d 61.) Although we have deemed it proper in the past to make a final ruling as to the sufficiency of the complaint on appeal from an interlocutory order ruling upon a request for preliminary injunctive relief (*Alfred Engineering, Inc. v. Illinois Fair Employment Practices Com.* (1974), 19 Ill. App. 3d 592, 312 N.E.2d 61), we do not do so here. However, as was held in *Whitaker,* we hold here that the trial court did not err in concluding that the complaint was not likely to set forth grounds for the permanent relief requested.

Plaintiffs' claim that they made a showing of probable success is based upon their allegations that (1) payment of the vouchers would violate the provisions of article VIII, sections 1(a) and 1(b), of the Illinois Constitution of 1970 which require that expenditure of public funds be (a) for a public purpose, and (b) as authorized by law, respectively, and (2) "An Act to authorize attendance at the National Conference of State

Legislatures * * *" (Ill. Rev. Stat. 1977, ch. 63, par. 123), by which defendants seek to justify the payments, delegates power in violation of article IV, section 1, of the Illinois Constitution of 1970.

In support of their theory that attendance at the conference was not for a public purpose, plaintiffs emphasize their allegations that (1) the Illinois delegation of about 100 persons was the largest of any State except the host State, (2) the delegation included about 48 staff employees as well as legislators, and commission and committee members, (3) cassettes of the proceedings would have been readily available for use without attendance at the conference, (4) the delegation was much larger than ever sent by the State before, which indicates that the alluring nature of San Francisco as a vacation place was the reason for such high attendance, and (5) no adequate system was set up to determine whether members of the delegation attended the sessions.

Plaintiffs cite the following cases where expenditures of public funds have been enjoined: *Fergus v. Russel* (1915), 270 Ill. 304, 110 N.E. 130 (payments under appropriation for legislative phone calls above amount specifically allowed by statute for other expenses); *Reid v. Smith* (1940), 375 Ill. 147, 30 N.E.2d 908 (payments pursuant to contract under invalid law refusing payment of prevailing wages to workers); and *Greenfield v. Russel* (1920), 292 Ill. 392, 127 N.E. 102; and *Cusack v. Howlett* (1969), 44 Ill. 2d 233, 254 N.E.2d 506 (both cases involving payment of funds for illegal legislative investigation). Those cases dealt not with whether the expenditures were for a purpose beneficial to the public but whether the expenditures would be illegal.

 We agree with plaintiffs that the question of whether funds are being spent for a public purpose can ultimately be one for the courts. (See Verbatim Transcripts of May 1, 1970 (Mr. Frank Cicero, Jr.), 2 Record of Proceedings, Sixth Illinois Constitutional Convention 870.) We have no difficulty in determining that attendance by State officials at a meeting dealing with State government serves a public purpose of providing them with information to better enable them to perform their public function. Attendance by their aides, whether to assist the public officials for whom they work or to whom they are assigned or to enable them to become better informed, also clearly serves a public purpose. No doubt the delegates also obtained considerable enjoyment from the amenities of San Francisco, but the public purpose of an undertaking is not defeated because participants also receive incidental personal benefit. (*People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 291 N.E.2d 807.) Not even the alleged fact that the decisive factor in determining to send some delegates was because of good work during the previous legislative session would negate the public purpose of their attendance.

We now turn to the question of whether the proposed expenditures

meet the requirement of article VIII, section 1(a), of the Illinois Constitution of 1970, that they be authorized by law. Attendance by "The Majority and Minority Leadership" of both houses is expressly authorized by "An Act to authorize attendance at the National Conference of State Legislatures * * *" (Ill. Rev. Stat. 1977, ch. 63, par. 123). No mention is made of payment of their expenses for attendance other than their membership fee but payment of their expenses would appear to be implied. Likewise such payment would appear to be implied for the members of the "appropriate" committees and commissions "as determined by such leadership." Plaintiffs allege that no prior determination was made by the leadership as to which commissions and committees were "appropriate" for attendance by its members. However, the legislation does not require that the determination be made prior to the meeting, and if the leadership makes the determination afterwards, the determination would have been properly made.

The foregoing legislation makes no express provision for attendance of legislative aides at the meeting. Plaintiffs argue that given the express provision authorizing attendance by certain persons, attendance by and, therefore, State payment of expenses for aides is thereby prohibited under the principle of *expressio unius, exclusio alterius*. They also maintain that because the legislation specifically addresses the question of those who may attend, it would control over any statute that might be in conflict. *Chicago Park District v. Harris* (1949), 402 Ill. 214, 83 N.E.2d 702.

The salary of legislators as well as their reimbursement for living expenses and travel to and from Springfield to attend sessions of the General Assembly is fixed by law (Ill. Rev. Stat., 1978 Supp., ch. 63, par. 14). Provision is also made for payment for supplies, office rental and staff not to exceed $17,000 per annum. (Ill. Rev. Stat., 1978 Supp., ch. 63, par. 15.1.) Legislation providing for legislative commissions and committees typically provides that the person serving thereon receive no compensation but be reimbursed for expenses. (See, for example, Ill. Rev. Stat. 1977, ch. 63, par. 24b.) Legislative provision is also made for staff assistants for the General Assembly with them to be assigned by the legislative leadership to provide research and service to members of committees during session and "such services as may be assigned" between sessions (Ill. Rev. Stat. 1977, ch. 63, pars. 131.1, 132). Neither their salaries nor reimbursement for their expenses are provided for by statute other than the requirement that their travel expenses are subject to regulations of the Legislative Travel Control Board. Ill. Rev. Stat. 1977, ch. 127, par. 148—5.

Thus, the legislative scheme is to be relatively specific as to legislators' salary and expenses, but to provide for the same for legislators'

aides only by implication and for legislators' office personnel only within a set total sum for expenses. By its express terms, "An Act to authorize attendance at the National Conference of State Legislatures * * *" (Ill. Rev. Stat. 1977, ch. 63, par. 123) speaks only as to the attendance of those who are to *represent* the General Assembly. It does not address the question of support personnel. In view of the legislative format described, we deem it unlikely that it was intended to prohibit reimbursement of the expenses of the aides in question nor even to negate the implication that the expenses should be paid if the aides were properly "assigned" to attend the meeting. We conclude that the plaintiffs have not shown that the expenditures were not authorized by law.

■ Finally, plaintiffs assert the delegation of the power to determine the appropriate committees or commissions to send their members to the conference is an unlawful delegation of legislative power. (See 1 Sutherland, Statutory Construction §4.02 (4th ed. Sands 1972).) Rather we consider this to be an internal delegation of administrative responsibility within the legislative body. See Sutherland, §7.02.

As we have stated, the posture in which we review this case requires us to discuss the sufficiency of the complaint, but we do not make a final determination in that respect. When a sharper focus is placed upon the issues, plaintiffs may be able to persuade that the complaint is sufficient or may be able to strengthen the complaint by amendment. We simply rule that the trial court did not err in denying the requested interlocutory relief.

For the reasons stated, we affirm.

Affirmed.

MILLS, P. J., and TRAPP, J., concur.