CHRISTINE D. PROULX, by her Next Friend, Clovis Proulx, *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS HIGH SCHOOL ASSOCIATION *et al.*, Defendants-Appellants.

Fourth District   No. 4—83—0775

Opinion filed July 10, 1984.

MILLER, J., dissenting.

Wayne F. Plaza and Margaret S. Garvey, both of Rooks, Pitts, Fullagar & Poust, of Chicago, and David L. Requa, of Heyl, Royster, Voelker & Allen, of Springfield, for appellants.

No appearance for appellees.

JUSTICE WEBBER delivered the opinion of the court:

This appeal presents another in the relatively small but growing series of cases in which amateur athletes resort to the judicial system when displeased with the rulings and regulations of their associations. On petition of the plaintiffs, the circuit court of Sangamon County enjoined the defendant association from barring or preventing the plaintiffs from participating in a swim meet. The defendants have appealed. No evidence was taken in the trial court and therefore the factual situation must be gleaned from the pleadings. These consist of plaintiffs' complaint, affidavits verifying the complaint, a petition for

temporary injunction, verified by affidavit, counsel's affidavit concerning notice, and the trial court's order of injunction.

It appears that the plaintiffs are members of the Springfield High School girls' swimming team; the defendants are the Illinois State High School Association (IHSA) and certain of its officers and directors. The IHSA is a voluntary association of public and private high schools in the State whose purpose is to conduct interscholastic activities, including the Illinois State Girls Swim Meet Series. Springfield High School, a unit of School District No. 186, located at Springfield, is a member of the IHSA.

The Illinois State Girls Swim Meet Series for the year 1983-84 consisted of three tiers: (1) participation by the high school's team in six interscholastic swimming and diving meets during the school year; (2) a sectional meet held on November 12, 1983; and (3) the State Final Meet held on November 18-19, 1983, at New Trier High School in Northfield, Illinois. The plaintiffs had participated through the sectional meet and had qualified for participation in the State Final Meet.

On November 16, 1983, the Springfield Education Association, which represented teachers employed in District No. 186, notified the district that a work stoppage would commence on November 17, 1983. The IHSA had promulgated what is denominated in the complaint as its "strike policy." It is not clear whether this constitutes a rule or regulation of the IHSA, but in any event the parties have treated it as binding upon Springfield High School. The policy provides that:

> "[A] member school which does not have 51 percent of the students in the district in attendance and cannot offer the minimum program required by state law and ISBE Circular Series A160 shall not engage in interscholastic activities.
>
> IHSA By-Laws 3.012 and 3.015, relating to attendance requirements and eligibility requirements of interscholastic participants and By-Laws 2.040, relating to schools with which contests may be held, shall be enforced."

The bylaws mentioned have to do with school attendance by individual students during the semester.

The work stoppage began on November 17 and a representative of the State Board of Education determined on that date that District No. 186 could not offer the minimum program required by State law. In light of that determination, the executive secretary of the IHSA ruled that the plaintiffs could not participate in the State Final Meet, and this ruling was upheld by the IHSA Board of Directors on November 17, 1983.

On November 18, 1983, plaintiffs filed in the circuit court of Sangamon County a "Complaint for Injunctive Relief," verified by the affidavits of the parents of the plaintiffs as their next friends. There was also filed a "Petition for Temporary Injunction," verified by one of the parents, and an affidavit of counsel delineating his efforts to notify the defendants by telephone of a hearing on the petition, which was apparently scheduled for a hearing at 1:30 p.m. on November 18.

The complaint alleged facts as recited above and in addition alleged that the plaintiffs' swimming coach was not involved in the work stoppage and was able to provide supervision of the plaintiffs. The critical allegations for the purpose of this opinion are:

> "The plaintiffs will be irreparably [sic] harmed if they are not permitted to participate in the Girl's State Swimming Meet Series as said series is a unique event that cannot be delayed or rescheduled from its scheduled November 19, 1983 date.

> Defendants will not suffer injury by permitting Plaintiffs to participate in the State Swimming Meet Series in that should Defendants prevail in this cause all awards won by Plaintiffs in the Final Meet can be returned to Defendants and distributed to other participants.

> Plaintiffs seek merely to maintain the status quo until the ultimate issue in this cause can be decided."

The "Petition for Temporary Injunction" incorporated all of the allegations of the complaint and further alleged that the preliminaries of the final meet were to commence at 4 p.m. on November 18 at New Trier. It prayed that the defendants be temporarily enjoined from barring or preventing the plaintiffs from participation in the final meet. The trial court's order, which is dated November 18, 1983, at 1:50 p.m., allowed the prayer of the petition and further ordered a hearing on the petition to be conducted at 1:30 p.m. on November 21, 1983. November 18, 1983, fell on a Friday.

Defendants immediately filed a notice of appeal pursuant to Supreme Court Rule 307(a)(1) (87 Ill. 2d R. 307 (a)(1)) accompanied by a motion for stay of the order under Supreme Court Rule 305 (b)(1) (87 Ill. 2d R. 305 (b)(1)). This court held a special session on November 19, 1983, at 10 a.m. to consider the matter. A divided panel allowed the motion for stay, but unanimously held to retain jurisdiction under the notice of appeal. Thereafter, on December 5, 1983, the plaintiffs filed a motion in this court to dismiss the appeal as moot. A divided panel of this court denied that motion.

The plaintiffs-appellees have not filed a brief in this case. However, the appellants' brief demonstrates reversible error which finds

support in the record, which is short and simple. We therefore elect to consider the merits, and in doing so reverse the trial court. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

We are faced at the outset with a problem which is more than semantic in nature, namely, what sort of an order is the subject of this appeal? Is it a temporary restraining order under section 11—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 11—101) or is it a preliminary injunction under section 11—102 (Ill. Rev. Stat. 1981, ch. 110, par. 11—102)? If the former, it is not an appealable order; if the latter, it is appealable. *Paddington Corp. v. Foremost Sales Promotion, Inc.* (1973), 13 Ill. App. 3d 170, 300 N.E.2d 484.

We find no assistance in an examination of the order itself. It is stated that the matter came before the trial court on the petition for a temporary injunction and that telephonic notice was given to the defendants. The judgment portion "enjoined" the defendants from barring or denying the plaintiffs their participation in the swim met. There is no statement whether the enjoinment is temporary, preliminary, or otherwise. Nevertheless, the final paragraph sets the petition for a hearing some three days later and indicates the date and time of day of issuance. This partakes of the procedure for a temporary restraining order.

■ On balance, we believe that the order in question more closely resembles a preliminary injunction. We do so after looking to the substance rather than the form of the order. (*Paddington Corp v. Foremost Sales Promotion, Inc.* (1973), 13 Ill. App. 3d 170, 300 N.E.2d 484; *Bullard v. Bullard* (1978), 66 Ill. App. 3d 132, 383 N.E.2d 684.) Therefore, this court has jurisdiction, although we deprecate the imprecision and imperfection of the document presented to us.

Section 11—102 of the Code of Civil Procedure concerning preliminary injunctions (Ill. Rev. Stat. 1981, ch. 110, par. 11—102) states:

> "No court or judge shall grant a preliminary injunction without previous notice of the time and place of the application having been given the adverse party unless it clearly appears, from specific facts shown by the verified complaint or by affidavit accompanying the same, that immediate and irreparable injury, loss or damage will result to the applicant before notice can be served and a hearing had thereon."

The statute is substantially similar to Rule 65(a)(1) of the Federal Rules of Civil Procedure. (28 U.S.C.A. R. 65 (1982).) In *Medeco Security Locks, Inc. v. Swiderek* (7th Cir. 1981), 680 F.2d 37, 38, the court said:

"It is well established that, in general, a motion for a preliminary injunction should not be resolved on the basis of affidavits alone. Normally, an evidentiary hearing is required to decide credibility issues."

We agree with this rationale. "[O]n review, we can only base our judgment of the propriety of the trial court's determination on a consideration of the sufficiency of the complaint." *Webb v. Rock* (1980), 80 Ill. App. 3d 891, 896, 400 N.E.2d 959, 964.

We point out at the outset that the only affidavits in the record are those of the parents simply verifying the complaint and petition and that of counsel setting forth his efforts at notice. Since no testimony was taken, the trial court acted only on a bare-bones complaint and petition, both of which are conclusory in the extreme and fail to allege, even in a conclusory fashion, the necessary predicates for a preliminary injunction.

■ These predicates are well known. Briefly stated, they are: (1) a clearly ascertained right of the plaintiffs; (2) irreparable injury to that right; (3) no adequate remedy at law; and (4) likelihood of success on the merits. *Board of Education v. Eçkmann* (1982), 103 Ill. App. 3d 1127, 432 N.E.2d 298.

Plaintiffs' "right," if it exists, must be that of participation in interscholastic athletics; furthermore, the "right" of participation must be an integral part of the educational process in order to be afforded protection. However, the relationship of education to athletics is far from clear. If the "right" is to find a basis for protection, it must be on due process of law.

■ The courts of this country have sharply divided on the question of protectable interests in participation. (See J. Weistart & C. Lowell, The Law of Sports sec. 1.11, at 20 (1979), and the cases there collected.) We believe that the better reasoned authorities find no such interests. In our own jurisdiction, *Robinson v. Illinois High School Association* (1963), 45 Ill. App. 2d 277, 195 N.E.2d 38, *cert. denied* (1965), 379 U.S. 960, 13 L. Ed. 2d 555, 85 S. Ct. 647, bears striking parallels to the instant case. There the trial court enjoined the same defendant as here from preventing the plaintiff from competing in high school athletic contests. The appellate court reversed and quoted at length from *State of Indiana ex rel. High School Athletic Association v. Lawrence Circuit Court* (1959), 240 Ind. 114, 162 N.E.2d 250, and stated:

"The court stated that the right of the plaintiffs in the Circuit Court proceeding, to go to the public schools and receive education and training cannot properly be said to include inter-

school basketball as may be engaged in between picked teams of the various schools constituting the membership of the Indiana High School Athletic Association." 45 Ill. App. 2d 277, 286, 195 N.E.2d 38, 43.

In short, plaintiffs failed to allege the existence of any protectable right, and in the circumstances of this case it appears that no such right exists.

■ As to the question of injury, the complaint is again conclusory and nothing is stated in the record as to how the plaintiffs have been injured. Some courts have held that participation in high school athletics may be a means for students to obtain college scholarships. (See, for example, *Regents of the University of Minnesota v. National Collegiate Athletic Association* (8th Cir. 1977), 560 F.2d 352.) However, even such a minimal allegation as this is lacking here. All that is said is that the swim meet was "unique," but without any further explanation as to how that quality affects the plaintiffs. In *Board of Education v. Board of Education* (1983), 112 Ill. App. 3d 212, 445 N.E.2d 464, the court held that the bare allegation of "illegal" was insufficient to establish harm. In our opinion "unique" is even less pejorative than "illegal." Plaintiffs failed to allege or establish any irreparable injury.

Since no right nor injury has been alleged, the questions of adequate remedy at law and likelihood of success on the merits become moot.

We regard the action of the trial court as an unwarranted interference in the affairs of the defendant association. There is no allegation that the "strike policy" was invalid, arbitrary or capricious, nor that it was being fraudulently applied to the plaintiffs. The *Robinson* court, quoting from 4 Am. Jur. *Associations & Clubs* sec. 17, at 466 (1936) said:

" 'It is well established that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud or lack of jurisdiction. Accordingly, it is held that mandamus will not lie to regulate the affairs of unincorporated societies or associations, at least not in the absence of a permissive statute. Nor will an injunction be granted where the association is proceeding in accordance with its rules and within the scope of its jurisdiction. The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion or arbitrariness, be accepted by the courts as conclusive. Moreover, it is held that the courts will not undertake to inquire into the regularity of the procedure

adopted and pursued by such tribunals in reaching their conclusions.' " (45 Ill. App. 2d 277, 284, 195 N.E.2d 38, 42.)

Accord, *Sanders v. Louisiana High School Athletic Association* (La. App. 1970), 242 So. 2d 19.

■■ We are aware of the distress and frustration which must have been visited upon the plaintiffs and their parents, and even upon the other students at Springfield High School, when the actions of others beyond their control caused them to be disqualified. However, this is not a sufficient basis for judicial intervention. Courts are not to be regarded as a sanctuary from all the problems and vicissitudes of modern life. They are ill-equipped, intellectually and otherwise, to override and second-guess the decisions of administrators who live and work with their particular areas on a daily basis. Courts must approach hardships of the type seen in the instant case with great caution and with a decent respect for the integrity of the organization with which they are dealing.

The order of the circuit court of Sangamon County is reversed.

Reversed.

TRAPP, J., concurs.

JUSTICE MILLER, dissenting:

I agree with the plaintiffs that the issues presented by this appeal are moot.

It does not help the parties, nor does it add definition to a growing body of law, to now decide that the order appealed from is appealable and that the trial court erred when, based only upon a "bare-bones complaint and petition" which failed to contain the allegations required, it enjoined the defendant from preventing the plaintiffs from participating in the swim meet.

Because the swim meet was held without the participation of the plaintiffs and the issues are moot, I would dismiss the appeal.