Docket No. 46187—Agenda 35—March, 1974.
CAROLYN L. CRAWLEY, Appellee, v. ROBERT N. BAUCHENS, Appellant.

*Opinion filed May 29, 1974.*

Thomas Carter O'Brien, of Chicago, for appellant.

James W. McRoberts, Jr., of McRoberts, Sheppard, McRoberts & Wimmer, of East St. Louis, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

The circuit court of Madison County enjoined Carolyn Crawley, pursuant to post-divorce petitions filed by her former husband, Robert Bauchens, from causing or permitting the adoption of their child by her present husband, Joseph Crawley. The court also ordered Mrs. Crawley to withdraw her consent to an adoption proceeding then pending in the United States District Court for the District of the Canal Zone. On appeal, the Appellate Court for the Fifth District reversed those portions of the trial court order requiring the withdrawal of consent and prohibiting

further action to permit the adoption. (*Crawley v. Bauchens* (1973), 13 Ill. App. 3d 791.) We granted leave to appeal.

The parties were married in Madison County, Illinois, in 1964. A child, Eric, was born in 1967. They separated in 1968 and were divorced in August, 1969, in the circuit court of Madison County. The decree awarded custody of Eric, then 2 years old, to Carolyn. Robert was granted reasonable visitation rights and ordered to pay $25 per week in child support. In March, 1970, Carolyn met a career army officer, Major Joseph B. Crawley. Major Crawley had received orders in January, 1970, transferring him, effective April 5, 1970, to the Canal Zone for a 3-year period. Carolyn began corresponding with Robert, advising him that she was considering remarriage. About June of 1970, Carolyn decided to go to the Panama Canal Zone to marry Major Crawley, and notified Robert of her intentions. In response, Robert wrote:

"I suppose I might have some legal say to Eric leaving the country. I don't know if I do, but I would never do anything to counter what you feel is a wise, prudent, and necessary decision. But if you take Eric to some military base in some puppet country in some God forsaken part of the world for three years, you'd better be damn sure of what you're doing. Enough said?"

Carolyn's lawyer advised her that in these circumstances it was unnecessary to petition the court for leave to remove Eric from the State. Prior to her departure Carolyn was advised by Robert's lawyer that definite visitation arrangements should be agreed upon since she might remarry and reside in the Canal Zone. No such arrangements were made.

In July, 1970, Carolyn and Eric went to the Canal Zone where she married Major Crawley and where they have resided continuously until a recent transfer of Major Crawley to Guatemala. Between the divorce in August,

1969, and July, 1970, Robert visited Eric three or four times for several days each time. He did not see Eric from July, 1970, to June, 1971, because Carolyn and her son did not return to Illinois during that period nor did Robert visit the Canal Zone, although he had indicated to Carolyn that he might do so. He stopped paying child support shortly after Eric was removed to the Canal Zone, but established an Illinois bank account for Eric with himself as trustee into which he paid some money in lieu of child support.

In March of 1971 Major Crawley and Carolyn began proceedings to adopt Eric. Major Crawley filed a petition for adoption in the United States District Court for the District of the Canal Zone accompanied by Carolyn's consent. Under Canal Zone law the only necessary petitioner in this type of adoption proceeding is Major Crawley, although Mrs. Crawley is required to file a consent. Robert's consent to the adoption is not required since Carolyn is a natural parent with custody. (8 C.Z.C. 382, 76A Stat. 690.) Robert was, however, served with notice of the adoption proceedings on April 23, 1971. On April 30 Robert filed a petition in Madison County circuit court requesting that Carolyn be held in contempt for removing Eric from the State without leave of court. That petition was set for hearing on July 9. In June Robert appeared by counsel in the Canal Zone proceedings and filed responsive pleadings resisting the adoption on the grounds of Major Crawley's nonresidence. In late June the Crawleys and Eric returned to Illinois and Eric visited with his father. Immediately prior to the hearing on the contempt citation, Robert filed additional pleadings seeking to enjoin Carolyn from proceeding with the adoption, to require her to withdraw her consent to the adoption and to restrain her from removing Eric from Illinois.

At the July 9 hearing the trial court noted that Robert Bauchens was $1,250 in arrears for child support and that Carolyn Crawley had removed Eric to the Canal Zone

without leave of court, but that neither of these actions was contemptuous under the circumstances. That court then ordered Robert to pay the overdue child support and to make future payments directly to Carolyn. It also enjoined Carolyn from removing Eric from Illinois until a $2,500 bond was posted conditioned on the further requirements that Eric be returned to Illinois thrice yearly for visitation at her expense, that she withdraw her consent to the adoption and that she do nothing further to cause or permit Eric's adoption. The appellate court affirmed the orders dealing with child support, visitation and the bond, but, as earlier noted, reversed the orders insofar as they required her to withdraw her consent and prohibited her co-operation in the adoption proceedings.

The validity of the child-support, visitation and bond orders is not here questioned. The only issues before us are whether the trial court had the power to order the withdrawal of consent and to enjoin Carolyn Crawley from causing or permitting the adoption, and if so, whether its exercise was appropriate.

The appellate court, in holding that a State court could not interfere with the rights of the parties in the Canal Zone action, relied primarily on *Donovan v. City of Dallas*, 377 U.S. 408, 12 L. Ed. 2d 409, 84 S. Ct. 1579. *Donovan* involved an effort by a group of Dallas citizens to prevent the construction of an additional airport runway and the selling of municipal bonds for that purpose. They were unsuccessful in the State court and thereafter sought similar relief in the Federal court. The Supreme Court of Texas ordered the Court of Civil Appeals to enjoin the plaintiffs from proceeding in the Federal court, and the plaintiffs were eventually cited and convicted of contempt for persisting in the Federal court litigation. The United States Supreme Court reversed, holding that "*** state courts are completely without power to restrain federal-court proceedings in *in personam* actions like the one here" and that a right granted by Congress to a Federal-

court remedy cannot be taken away by the State. 377 U.S. at 413.

The appellate court also concluded that even if this matter were pending in a sister State court, rather than a Federal court, its decision would be the same since the Canal Zone court had jurisdiction of the subject matter and all interested parties, no fraud, gross wrong or oppression was present, and the suit had not been initiated in the Canal Zone for the purpose of circumventing Illinois law.

Appellant urges that the prohibition of *Donovan* does not apply to a proceeding in a legislatively created court such as the Canal Zone Federal District Court, as distinguished from a constitutionally mandated court, and that the Madison County circuit court does have the power to enjoin the proceedings there. The extent to which *Donovan* remains viable and the status of the Canal Zone court are interesting and inviting questions. (See Mr. Justice Harlan's dissent in *Donovan,* 377 U.S. at 414, 12 L. Ed. 2d at 414, 84 S. Ct. at 1583; D. Currie, The Federal Courts and the American Law Institute, Part II, 36 U. Chi. L. Rev. 268, 334-335 (1969); Comment, Anti-Suit Injunctions Between State and Federal Courts, 32 U. Chi. L. Rev. 471, 502, 507 (1965).) On the question of the distinction between legislative and constitutional courts in the Federal system, see *American Insurance Co. v. 356 Bales of Cotton,* 26 U.S. (1 Pet.) 511, 7 L. Ed. 242; *Ex parte Bakelite Corp.,* 279 U.S. 438, 73 L. Ed. 789, 49 S. Ct. 411; *Williams v. United States,* 289 U.S. 553, 77 L. Ed. 1372, 53 S. Ct. 751; *Glidden Co. v. Zdanok,* 370 U.S. 530, 8 L. Ed. 2d 671, 82 S. Ct. 1459; *Palmore v. United States,* 411 U.S. 389, 36 L. Ed. 2d 342, 93 S. Ct. 1670.

These are questions, however, that we need not consider. In our judgment, the injunction issued by the Madison County circuit court was improperly issued irrespective of the genesis or status of the Canal Zone court.

There is nothing in this court to indicate that Carolyn Crawley was attempting to perpetrate a fraud or deprive Robert Bauchens of the visitation rights he had been granted by the Madison County circuit court when she left Illinois with her son and traveled to the Canal Zone. She went for the entirely legitimate purpose of marrying her present husband, who was then stationed there. It was not inappropriate, given the fact Robert Bauchens had no objection, that she took Eric with her. Likewise, while Robert Bauchens was not granted custody of his child, he was awarded visitation rights and is to be commended for his continued interest in his child. We agree with the trial and appellate courts that neither his delinquent status as to child-support payments nor Carolyn's action in taking Eric out of the country without official leave of court amount to contempt in the circumstances here. Nothing in the record indicates that either party is less than a fit and capable parent. Rather, we have the distressing problem frequently arising where remarriage occurs, and to which there is no completely satisfactory solution. In such situations the courts have been guided, to the point that human agencies can determine that course, by what has seemed to be in the best interests of the child.

An injunction, however, is an extraordinary remedy to be granted only in exigent circumstances. (See *Vulcan Detinning Co. v. St. Clair,* 315 Ill. 40.) We agree that a court of equity has the power, in appropriate circumstances, to restrain persons within its jurisdiction from instituting or proceeding with actions in the courts of this or sister States. (*James v. Grand Trunk Western R.R. Co.,* 14 Ill.2d 356, *cert. denied,* 358 U.S. 915, 3 L. Ed. 2d 239, 79 S. Ct. 288.) Such restraint is only called for, however, when the prosecution of the action in another jurisdiction would result in fraud, gross wrong or oppression. (*Illinois Life Insurance Co. v. Prentiss,* 277 Ill. 383.) Conduct of that nature is not established by this record. Despite the conceded inconvenience and expense to Robert Bauchens,

and the differences in statutory provisions between Illinois and the Canal Zone, we do not believe the interests of justice or the best interests of Eric Bauchens are served by the injunction entered by the circuit court of Madison County. "Illinois has consistently followed the course of refusing to restrain the prosecution of a prior instituted action pending in a sister State unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice; and neither a difference of remedy afforded by the domicile and the forum nor mere inconvenience and expense of defending will constitute grounds for such an injunction. [Citations.] " *James v. Grand Trunk Western R.R. Co.*, 14 Ill.2d 356, at 363.

Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*