RHONDA CLEMENTS, A Minor, by Her Father and Next Friend, H. Durwood Clements, Plaintiff-Appellant, v. BOARD OF EDUCATION OF DECATUR PUBLIC SCHOOL DISTRICT NO. 61 *et al.*, Defendants-Appellees.

Fourth District   No. 4—85—0292

Opinion filed May 30, 1985.

Frederick P. Erickson and Theodore E. Paine, both of Erickson, Davis, Murphy & Paine, Ltd., of Decatur, for appellant.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur (John T. Taylor and Thomas E. Little, of counsel), for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On April 23, 1985, plaintiff, Rhonda Clements, by H. Durwood Clements, her father and next friend, brought suit in the circuit court of Macon County against the board of education of Decatur Public School District No. 61 (district) and various of its officials. One of those officials was Marion F. Fox, principal of MacArthur High School, one of the schools operated by the district. The complaint alleged that plaintiff, Rhonda Clements, was a student at MacArthur High School and had been a member of its girls' interscholastic softball team until April 16, 1985, when she was suspended for the season by Mr. Fox. She sought preliminary and permanent injunctive relief against the operation of the suspension. On April 29, 1985, the circuit court entered an order which denied a preliminary injunction and allowed a defense motion to dismiss the complaint.

Pursuant to the provisions of Supreme Court Rule 307(a)(1) (87 Ill. 2d R. 307(a)(1)), plaintiff has filed a notice of interlocutory appeal from the portion of the order denying the preliminary injunction but has not appealed from the dismissal of the complaint. We need consider only the propriety of the denial of the preliminary injunction. As we will subsequently explain, where no deprivation of constitutional rights are in issue, courts are extremely reluctant to interject themselves into the operation of the public school system, particularly when the relief requested is the issuance of the extraordinary writ of injunction. It is with recognition of that reluctance that we affirm the

decision of the trial court's refusal to grant temporary injunctive relief.

We note that the initial paragraph in the district's policy guide for its athletic program states that this program "is an integral part of the education of all students" attending district schools. We fully appreciate the meaning to a high school student of the opportunity to participate in extracurricular programs, including interscholastic athletics. Many people cherish such experiences. However, much uncertainty exists as to the nature of the legal interest which a student has in order to seek relief from the courts against alleged unfairness in the administration of those programs. Compare *Proulx v. Illinois High School Association* (1984), 125 Ill. App. 3d 781, 466 N.E.2d 620; *Robinson v. Illinois High School Association* (1963), 45 Ill. App. 2d 277, 195 N.E.2d 38; *Bunger v. Iowa High School Athletic Association* (Iowa 1972), 197 N.W.2d 555; *Robin v. New York State Public High School Athletic Association* (N.Y. App. 1979), 71 App. Div. 2d 1009, 420 N.Y.S.2d 394.

Clearly, government action denying a student equal protection of the law in the administration of the athletic program would subject the governmental unit to legal mandate upon the request of the student. On the other hand, the interest in participating has been held not to be property within due process concepts. (*Mitchell v. Louisiana High School Athletic Association* (5th Cir. 1970), 430 F.2d 1155; *Kulovitz v. Illinois High School Association* (N.D. Ill. 1978), 462 F. Supp. 875.) In *Robinson*, in holding that the trial court erroneously enjoined the association conducting the State high school sports' program from barring an athlete for being overage, the appellate court based its decision partly upon the lack of unreasonable, arbitrary or capricious conduct on the part of the association. In *Proulx*, this court held that the trial court erroneously enjoined the same association from permitting athletes from a school where the teachers were on strike from participating in a meet and noted that no contention had been made that the conduct of the association was unreasonable, arbitrary or capricious.

■ Where a student contends that public school officials have subjected the student to improper treatment but no deprivation of constitutional rights are alleged, the appropriate standard used to determine whether the conduct of the officials is actionable is whether the conduct is arbitrary or capricious. (*Burroughs v. Mortenson* (1924), 312 Ill. 163, 143 N.E. 457; *Wilson v. Collinsville Community Unit School District No. 10* (1983), 116 Ill. App. 3d 557, 451 N.E.2d 939; *Donaldson v. Board of Education* (1981), 98 Ill. App. 3d 438, 424

N.E.2d 737.) The standard is also one which has been applied to determine whether courts of equity should intervene in the affairs of voluntary associations to protect the rights of its members. *Robinson v. Illinois High School Association* (1963), 45 Ill. App. 2d 277, 195 N.E.2d 38.

Plaintiff originally alleged that the conduct of the district in suspending her was violative of her constitutional rights and was, also, "unreasonable, arbitrary or capricious." On appeal, she does not argue that she suffered constitutional deprivation but relies on her contention that the district was "unreasonable, arbitrary or capricious." The defense does not dispute that the latter is the appropriate standard. We will discuss the conduct of the defendants on the basis of that standard. We deem the standard to envision conduct that is more egregious than being merely unreasonable and will not use that adjective in our discussion. Obviously, judgment decisions of a coach as to whom to select for a squad or as to whom to be playing at particular times would seldom, if ever, be deemed arbitrary or capricious. The same would be true in regard to routine discipline imposed by the coach. Major disciplining decisions made, as here, by the administration should be subject to somewhat more scrutiny.

We now consider the facts, as shown by the record, that were involved in the imposition of the suspension upon plaintiff. For the most part, the facts are undisputed.

On the evening of March 23, 1985, plaintiff worked at a grocery store until 9 p.m., when she went to the home of Danny McCoskey. She testified that her purpose in going there was to meet two female friends who were to be there and then to leave. She testified that she knew others were to be there, but that she did not know that beer was to be served. She admitted that shortly after arrival there she saw "a beer" on a table but did not see anyone drinking. The evidence was overwhelming that plaintiff did no drinking there. After she had been at the McCoskey house for no more than 15 minutes, police arrived on the scene and stopped the party. Plaintiff was questioned and released. Evidence indicated that there was a keg of beer in the basement and that about 40 minors were present in the house, some of whom were drinking the beer.

The next day, plaintiff told the team softball coach about the occurrence at the McCoskey house. The coach informed Mr. Fox, the principal. He then suspended plaintiff pursuant to a provision of the Decatur Public Schools Athletic Code, which states, in part:

"Insubordination, poor sportsmanship, violation of individual coaches rule, or *anti-social behavior* exhibited by athletes is

considered detrimental to the team and to school spirit. The participant shall receive not less than a reprimand and not greater than suspension for the season." (Emphasis added.)

Mr. Fox deemed plaintiff's presence at the party at the McCoskey house to be "anti-social behavior" within the meaning of the foregoing Code provision.

The Athletic Code also contained prohibitions against the use of hard drugs, alcohol and tobacco and prescribed sanctions of suspension for violations. The rules were prefaced by a requirement that the rules (1) be in writing and posted where team members might see them; and (2) be explained by each team coach at the beginning of a season in order to make sure that all team members were aware of them. The Code also stated that any person accused of a violation had a right to a hearing.

The plaintiff and the defendants agree that the district can properly enact a rule which prohibits its athletes, during season, from attending parties where alcoholic beverages are being consumed by minors. Plaintiff contends, however, that (1) attending such a party does not come within the definition of "anti-social behavior"; (2) the manner in which the Code was explained to her by the coach gave no indication that attendance at such a party was prohibited or that she could be suspended for doing so; (3) she did not know that intoxicants were being served to the group gathering at the McCoskey house; and (4) in any event, her participation in the party was so brief that the maximum penalty imposed against her was far too harsh.

The dimensions of the phrase "anti-social behavior" are obviously rather indefinite. Ordinarily, the phrase would refer to conduct by which one person injures others. While the presence of minors at a party where other minors are illegally consuming alcoholic beverages is highly undesirable, it is not fully apparent that the conduct would be considered "anti-social." However, the semantic problems involved would be significant only if the notice to plaintiff of the rules arose from the posting of the rules as required in the Code. Plaintiff testified that she never saw the rules, and there was no evidence that they were ever posted. Her notice of the rules resulted from an explanation given by the coach of the team. Plaintiff's strongest argument that the suspension was arbitrary or capricious arises from the substance of this explanation.

During the proceedings in the trial court, the coach testified that she "talked to [the players] about drinking and smoking and the fact that if they were caught, the first time would be a week suspension, the second time would be expulsion." The coach also testified that in

reference to parties where alcoholic beverages were being served, she *"advised* them not to go to [the] parties because of the 'busts,' and just to stay away from that kind of situation." (Emphasis added.) On cross-examination, the coach admitted that she was not telling the team members there was a rule against attendance, but that "it would be best" if they did not attend.

The school administration should have followed its own rules by seeing that those rules were posted as required. Quite likely, the principal was unaware at the time of imposing the suspension that the coach had told the team members that attendance at the type of parties discussed was merely inadvisable and not against the rules. Nevertheless, the result of the suspension was to impose upon the plaintiff, for not following the advice of the coach, a sanction for the first offense which was many times greater than the stated first-time sanction for violating an expressly stated rule against drinking or smoking. This result is at the heart of our concern.

The evidence viewed most favorably to the district does indicate that plaintiff's participation in the party was minimal, but she could have been there for 15 minutes. She admitted seeing some beer there, and she admitted moving around some while there. No evidence indicated that she went to the basement where the beer keg was located, but the court could have inferred from the evidence that she knew that some of the minors there were drinking beer. She admitted that her coach had advised the team members not to attend such parties. Both the superintendent and the trial court could have concluded that she did not actually intend to leave as soon as she found her friends.

The grant of the writ of injunction is an extraordinary remedy. (*Crawley v. Bauchens* (1974), 57 Ill. 2d 360, 312 N.E.2d 236.) Where no deprivation of constitutional rights have been involved, courts have been extremely reluctant to interject the court's power into the operation of the public schools even when the conduct of the principal functions of the schools, as distinguished from extracurricular activities, is concerned. In *Wilson,* the court held intervention to have been impermissible even though a student who was selling caffeine pills had been suspended for the year for violating a regulation prohibiting sale of " 'unauthorized drugs.' " (*Wilson v. Collinsville Community School District No. 10* (1983), 116 Ill. App. 3d 557, 561, 451 N.E.2d 939, 941.) In *Donaldson,* we held that no grounds for equitable relief were stated when a three-day suspension of a student came at a time when important examinations were to be given to the suspended pupil, and he was not permitted to take the examinations upon his return.

■ The opinions in *Proulx* and *Robinson* express even stronger

reluctance to intervene in the conduct of extracurricular activities. We recognize the disparity between the explanation given plaintiff by her coach and the action of the principal in suspending plaintiff, but we do not determine the imposition of the suspension to be sufficiently egregious to come within the narrow concept of arbitrary or capricious official conduct which justifies the extraordinary intervention by the court in the operation of the public schools of the State.

Our previously stated affirmance is for the foregoing reason.

Affirmed.

McCULLOUGH and TRAPP, JJ., concur.