TAMIKA ROBINSON, a Minor, by Janice Robinson, her Next Friend, *et al.*, Plaintiffs-Appellees, v. OAK PARK AND RIVER FOREST HIGH SCHOOL, Board of Education, District 200, *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—91—0790

Opinion filed April 17, 1991.—Rehearing denied May 22, 1991.

Vedder, Price, Kaufman & Kammholz, of Chicago (Allan E. Lapidus and Karen L. Taylor, of counsel), for appellants.

Douglas W. Graham, of Chicago, for appellee Tamika Robinson.

Armand L. Andry, of Oak Park, for appellee Nicole Jenkins.

JUSTICE GREIMAN delivered the opinion of the court:

The Oak Park and River Forest High School, Board of Education, District 200, Dr. Larry V. Walker and Dr. George A. Gustafson (hereinafter the Board) appeal from the entry of a temporary injunction restraining the Board from expelling plaintiffs, Tamika Robinson and Nicole Jenkins, freshmen students enrolled at the high school for the balance of the 1990-91 academic year.

Defendants' appeal has been perfected pursuant to the provisions of Supreme Court Rule 307, which allows "an appeal *** to the Appellate Court from an interlocutory order of court granting *** an injunction." (134 Ill. 2d R. 307(a).) In accordance with Supreme Court Rule 307(c), this court has ordered that no briefs need be filed.

We affirm the temporary injunction order entered by the circuit court and adopt much, but not all, of the thoughtful reasoning set out in its memoranda of opinion.

On January 7, 1991, the Board entered an order expelling both plaintiffs from the Board's high school for the balance of the 1990-91 academic year. The Board had previously conducted hearings and provided notice to plaintiffs' parents in accordance with the appropriate provisions of the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 10—22.6).

Plaintiffs were apparently involved in a fight or altercation on December 10, 1990, a school day, between 4 p.m. and 4:30 p.m. near the school operated by the Board. Plaintiffs, two other students who have been similarly expelled and two nonstudents were involved with a fifth person, Tameko Warren, a student who was apparently the focal point of the attack.

Approximately 13 witnesses gave testimony at the hearing conducted by the Board's hearing officer, and the record indicates that the facts are seriously in dispute among the various participants. One of the young women, not a plaintiff, Wanda Shelby, acknowledged that there had been bad words between Tameko Warren and her on a previous day and that some of the antagonism resulted from some competition for a boyfriend at a gospel sing in Wisconsin. Ms. Shelby admits that she began the altercation by first pushing Tameko Warren, this being corroborated by the statements of others who were present. There is testimony that plaintiff Tamika Robinson struck Ms. Warren in the melee although Ms. Robinson testifies that Ms. Warren had taken the first swing and that her action was limited to self-defense.

Another of the nonplaintiff students apparently picked up a stick to protect herself from a man who intervened in an attempt to stop

the battle. She admitted striking Ms. Warren, but stated that she also did not strike the first blow.

Finally, Nicole Jenkins, according to all of the witnesses, had no previous problems or difficulties with Ms. Warren and, in fact, attempted to break up the incident. She testified that she did not strike Ms. Warren and Ms. Warren did not recall being struck by Ms. Jenkins.

Apparently, no injuries were sustained by the combatants since none were noted by the various witnesses.

On the day following the incident, school personnel became deeply involved in the investigation of the occurrence, and at the Board hearing, testimony was adduced from Dr. Larry V. Walker, assistant superintendent of pupil and special services, Dean Rich Matthies, Dean Kathi Kyrias, Dean Guida, Dean William Tracy, and Dean L.M. Corrigan.

On December 12, 1990, the plaintiffs were suspended and the hearing alluded to above was held on December 19, 1990. On January 7, 1991, the Board, meeting *in camera*, voted to impose the harshest available punishment on plaintiffs and expelled them for the remainder of the 1990-91 school year.

Section 10—22.6 of the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 10—22.6) empowers a school board to "expel pupils guilty of gross disobedience or misconduct" without incurring any liability provided that the proper procedures set out in the statute have been observed.

In this regard, the Board has adopted certain Board policies, and Board Policy 5115 provides:

> "[G]ross disobedience or misconduct, which may lead to suspension or expulsion of a student pursuant to the provisions of Section 10—22.6 of the School Code shall include any activity or behavior which might reasonably lead school authorities to forecast substantial disruption or material interference with school activities or which in fact is a substantial disruption or material interference with school activities and shall also include but is not limited to the following types of activities of behavior:
>
> * * *
>
> 7. fighting or assaulting any person[.]
>
> * * *
>
> Action to suspend or expel may be taken whether the gross disobedience or misconduct occurs on school property, on a school bus, on the way to or from school, or at a school-related function."

Similar language appears in a document entitled "Student Expulsion Procedures" issued by the Oak Park and River Forest High School although indicating Board policy 5114 rather than 5115.

The Board's written policies have significantly varied the scope of "gross disobedience or misconduct" as set out in the statute. The definition provided by the Board would appear to limit its right to expel in the case at bar. Nothing in the record indicates that school authorities are able to forecast that these plaintiffs would substantially disrupt or materially interfere with school activities or that they, in fact, did substantially disrupt or materially interfere with school activities. They engaged in an altercation on the way home from school in the fourth month of their freshman year. No prior misconduct would have been the basis for such a forecast into the future. If a school board limits its powers granted by the statute, the board should be held to the limitations which it has imposed upon itself, such as the adoption of policy number 5115 (or 5114). However, we do not rely on this issue in affirming the trial court.

The maximum penalty that the Board may impose upon plaintiffs appears to be expulsion for the remainder of the school year. Under the act, a board is not authorized to expel a pupil for more than the remainder of the school year (1974 Ill. Att'y Gen. Op. 97). Accordingly, the Board here has elected to impose upon these young women the harshest penalty available. Plaintiffs assert, and the trial court below agreed, that the imposition of such a penalty is arbitrary, unreasonable and an abuse of the Board's discretion.

School discipline is an area in which school officials have broad discretion. Illinois courts have been reluctant to overturn decisions to suspend or expel students. *Burroughs v. Mortenson* (1924), 312 Ill. 163; *Clements v. Board of Education of Decatur Public School District No. 61* (1985), 133 Ill. App. 3d 531, 478 N.E.2d 1209; *Donaldson v. Board of Education for Danville School District No. 118* (1981), 98 Ill. App. 3d 438, 424 N.E.2d 737; *Smith v. Board of Education of Oak Park & River Forest Township High School* (1913), 182 Ill. App. 342.

Defendant Board relies on the language of *Donaldson*:

"School discipline is an area which courts enter with great hesitation and reluctance—and rightly so. School officials are trained and paid to determine what form of punishment best addresses a particular student's transgression. They are in a far better position than is a black-robed judge to decide what to do with a disobedient child at school." *Donaldson*, 98 Ill. App. 3d at 439.

While school officials may be better trained and more experienced in handling disciplinary matters concerning students, they are not infallible.

The record here discloses that the Board consists of a theatrical director, a hospital administrator, an accountant, a businessman, a doctor and two lawyers. While the courts are reluctant to involve themselves with a board's exercise of discretion, they have been willing to closely examine the facts of each case to determine the propriety of the court's review of board action.

*Donaldson* dealt with a three-day expulsion of a seventh grader for fighting while the case before us deals with a January-through-June expulsion. The impact of a semester expulsion on two students cannot be compared with the three-day suspension, albeit at final week, meted out in *Donaldson*.

In *Clements v. Board of Education of Decatur Public School District No. 61* (1985), 133 Ill. App. 3d 531, 478 N.E.2d 1209, suspension of a student from participation on a school athletic team after attendance at a beer party was an appropriate exercise of the Board's power. Similarly, expulsion from school for the balance of the school year was appropriate for a student who carried a loaded .357 magnum pistol into the school cafeteria (*Lusk v. Triad Community Unit No. 2* (1990), 194 Ill. App. 3d 426, 551 N.E.2d 660) or possessed look-alike caffeine pills (*Wilson v. Collinsville Community Unit School District No. 10* (1983), 116 Ill. App. 3d 557, 451 N.E.2d 939).

It is ludicrous to imagine that the conduct of Nicole Jenkins and Tamika Robinson rises to the level of gun toting as in *Lusk* or carrying pills as in *Wilson*. Nor, as we have previously noted, can their six-month expulsion be compared to the three-day suspension in *Donaldson*.

The record reveals that Jenkins' only involvement in the events of December 10, 1990, was to attempt to bring peace. Apparently, in Oak Park and River Forest High School, the peacemaker is not blessed. As to this student, there is nothing in the record upon which the Board based its decision except that she was in the wrong place at the wrong time. This is hardly a basis for drastic interruption of her academic career.

Even the testimony with respect to Tamika Robinson was confusing and conflicting. The evidence against her indicates that she did strike the victim, but did so in self-defense. Even though self-defense may not be an appropriate response or may be disbelieved by the Board, the imposition of the maximum penalty available would seem to be oppressive and unreasonable and an abuse of discretion where the

evidence does not disclose gross misconduct and is likely to have an extreme and unfortunate impact upon this young woman. The record discloses that Tamika Robinson is a poor student and at the time of the disciplinary hearing had been "working hard to bring up her grades" and showing improvement. What will be the impact of the Board's punishment on this young struggling student.

■ If the memoranda of opinion below has any fault, it is the notion that the punishment is too harsh because the facts are in conflict and difficult to determine. Once the trier of fact has made its determination as to the facts, the penalty or judgment should not be affected because of the original difficulties of the fact finder.

The affidavit of Bunny Carey, the president of the Board of Education of Oak Park and River Forest High School, reveals a good deal about the reasons for the imposition of this harsh penalty. President Carey states that Board members take a strong stand with respect to disciplinary problems and that at the meeting "Board members expressed their concern over the rising incidents of gang related activities and situations where a group would attack a lone individual."

Nothing in the record indicates that these are gang-related activities. Instead, they appear to be a random incident of young people resolving an imagined injustice by resorting to violence.

■ Although officials have broad discretion in the area of student discipline and a strong interest in discouraging packs of students or the organization of gangs, the Board's discretion has limits. In reviewing the Board's action to determine whether it has abused its discretion, the court must consider (1) the egregiousness of the student's conduct; (2) the history or record of the student's past conduct; (3) the likelihood that such conduct will affect the delivery of educational services to other children; (4) severity of the punishment; and (5) the interest of the child.

■ Considering all of these elements, the Board of Education of Oak Park and River Forest High School, District 200, has abused its discretion and the order providing for a temporary injunction restraining defendant Board from expelling the plaintiffs for the 1990-91 academic year is hereby affirmed.

Affirmed.

CERDA, P.J., and WHITE, J., concur.