NO. 4-02-0966

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

ISAAC MONTS, by His Parents and Natural Guardians, ROBERT MONTS and JUDY MONTS,

          Plaintiffs-Appellants,                   v.

ILLINOIS HIGH SCHOOL ASSOCIATION and PONTIAC TOWNSHIP HIGH SCHOOL,

          Defendants-Appellees.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

McLean County

No. 02MR185

Honorable

Elizabeth A. Robb,

Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiffs, Isaac Monts, by his parents and natural guardians, Robert and Judy Monts, appeal the order of the trial court granting defendant's, Illinois High School Association's (IHSA), motion for summary judgment.  The trial court found that IHSA's rules and bylaws were not vague or ambiguous and that IHSA exercised its power consistent with those rules and bylaws.  Therefore, the trial court held that no material facts remained in dispute and, as a matter of law, IHSA's decision that a recruiting violation had occurred was upheld.  We reverse and remand. 
  

I. BACKGROUND

Isaac Monts was a renowned quarterback, having set various school and state records while playing football at Streator Woodland High School (Streator).  Sometime during the 2001-02 school year, the Montses learned that Coach Aubrey, the football coach at Streator, was resigning and would not be coaching during the 2002-03 school year, Isaac's senior year.  Coach Aubrey asked the Montses if they would like for him to approach Coach Peterson, the football coach at Pontiac High School (Pontiac), about the possibility of Isaac playing football at Pontiac during his senior year.  The Montses gave Coach Aubrey permission to contact Coach Peterson.  Coach Peterson told Coach Aubrey to have the Montses contact him.  Robert Monts contacted Coach Peterson, and the two scheduled a dinner meeting to discuss the possibility of Isaac's transfer to Pontiac.  The meeting was held at a local restaurant on March 26, 2002.  During the meeting, Coach Peterson played a videotape entitled "The Perfect Fan" for the family.  Coach Peterson selected that particular tape in response to Judy Monts's concern that her son would be "just a number" at a larger school like Pontiac.  The Montses did not make the decision to transfer to Pontiac until after the meeting with Coach Peterson.  During the summer of 2002, Isaac attended Pontiac's football and basketball summer camps.

IHSA received a complaint from Streator that Pontiac recruited Isaac to play football.  IHSA conducted an investigation into the allegation.  IHSA's executive director found that Coach Peterson wrongfully recruited Isaac using "undue influence" in violation of IHSA's bylaws 3.071 and 3.073, which state in relevant part as follows:

"
3.071
 Recruitment of students or attempted recruitment of students for athletic purposes is prohibited, regardless of their residence.

3.073
 It shall also be a violation of this rule to induce or attempt to induce or encourage any prospective student to attend any member school for the purpose of participating in athletics even when special remunera­tion or inducement is not given.

No member school and no one acting on behalf of any member school shall give any speech or give any slide, film[,] or tape presentation or distribute any written material which states or implies that a member school's athletic program is better than the athletic program of any other member school or that it would be more advantageous for any prospective student-athlete to participate in athletics at that member school as opposed to any other school."

Due to the violations found, IHSA ruled Coach Peterson ineligible to coach at any IHSA member school for a period of one year beginning August 28, 2002, and Isaac permanently ineligible to participate in interscholas­tic activities at Pontiac.  The punishment imposed was pursuant to IHSA bylaw 6.010, which states in relevant part:

"Persons found guilty of exercising undue influence to secure or retain the attendance of a student at a member school shall be ineligible to coach at an IHSA member school for one year.  Sanctions shall also be imposed against the school represented by such persons.

Students whose high school attendance is found to have been affected by undue influence to secure or retain the student at a member school shall be permanently ineligible at that school."     

IHSA's bylaws define "undue influence" as "any influence exerted by school personnel upon a prospective student or a prospective student's family related to athletic participation, potential, or accomplishment."  The Montses appealed the executive director's decision to the board of directors (Board), before whom a hearing was held on September 9, 2002.  The Montses requested that the hearing be reported by a certified court reporter; however, the Board denied their request.  Due to the Board's arbitrary denial of the Montses' request, we are without the privilege of reviewing the testimony presented at the hearing.  We now have to rely upon the notes of the executive secretary, the pleadings, and affidavits filed by both parties as they appear in the record.    

IHSA's Board affirmed the executive director's decision.  The Montses requested that the Board reconsider its ruling.  The Board did so, allowing the Montses' attorney to argue before it, and again affirmed the executive director's decision.  The Montses then filed a three-count complaint in the McLean County circuit court.  Count I sought specific performance of the contract to permit Isaac to participate in athletics at Pontiac.  Count II sought a declaratory judgment as to the arbitrariness of the relevant IHSA bylaws and definition of "undue influence."  Count III alleged that the Montses were denied due process of law as required by article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2) in that Isaac had a property and liberty interest in participating in athletics and IHSA arbitrarily and capriciously deprived him of those interests.

IHSA and the Montses filed cross-motions for summary judgment.  The trial court granted IHSA's motion, finding that IHSA was a voluntary, private association and, as such, it would not substitute its interpretation of the rules or its view of what was fair and reasonable.  The court found no evidence of fraud or collusion and reviewed IHSA's conduct only to determine whether it was arbitrary and capricious.  The court found that it was not.  It also found that IHSA's definition of undue influence was neither vague nor ambiguous.  It found Isaac had no constitu­tional right to participate in sports, and he was not a third-party beneficiary to the contract between IHSA and Pontiac.  The court found that Isaac's punishment, although harsh, was imposed pursuant to IHSA's rules.  The court granted judgment as a matter of law in favor of IHSA.  This appeal followed. 

II
. ANALYSIS

The Montses claim that IHSA should not have declared Isaac ineligible because (1) doing so was a breach of contract, (2) IHSA's definition of "undue influence" was vague and ambiguous, and (3) ineligibility as a punishment was excessive, unreasonable, arbitrary, and capricious.  We address each of the Montses' claims in turn.

This is an appeal from the trial court's grant of summary judgment in favor of IHSA.  The standard of review for the entry of summary judgment is 
de
 
novo
.  
General Casualty Insurance Co. v. Lacey
, 199 Ill. 2d 281, 284, 769 N.E.2d 18, 20 (2002).

A. Breach of Contract

First, the Montses' breach of contract claim assumes that Isaac, as a student-athlete, is a third-party beneficiary to a contract, and as a third-party beneficiary, he has a contractual right to a determination of his eligibility based upon IHSA's constitution and bylaws.  IHSA's refusal of eligibility, the Montses claim, constitutes a substantial and material breach of contract.  The Montses request specific performance.

The contract relevant to this claim is IHSA's constitution, bylaws, and regulations.  See 
Talton v. Behncke
, 199 F.2d 471, 473 (7th Cir. 1952) (an unincorporated society "has no governing law other than and except its [c]onstitution and [b]y-laws, which constitute a binding contract between all the members and officers").  To succeed on a third-party beneficiary claim, the Montses must show that Isaac was an intended, not merely an incidental, beneficiary to the contract between IHSA and Pontiac.  
Hall v. National Collegiate Athletic Ass'n
, 985 F. Supp. 782, 796 (N.D. Ill. 1997).

In 
Hall
, the plaintiff claimed that he, as a student­athlete, was an intended third-party beneficiary between the National Collegiate Athletic Association (NCAA) and Bradley University (Bradley).  The NCAA's decision that he was not eligible to play basketball for Bradley due to academic reasons was a breach of the implied covenant of good faith and fair dealing.  The reviewing court noted that although it was the function of the NCAA to benefit student-athletes, it was not clear whether that function was sufficient to elevate the student from an incidental to an intended beneficiary.  For guidance, the court referred to the decision in 
Hairston v. Pacific 10 Conference
, 101 F.3d 1315 (9th Cir. 1996), which held that the "Pac-10's" constitution (even though it proclaimed the conference's mission was to benefit student-athletes) was not intended as a contract between the conference and every athlete on a Pac-10 team.

The 
Hall
 court distinguished 
Hairston
 from its facts, noting that the NCAA was different from the Pac-10 in that the NCAA determined the eligibility of every student-athlete.  The Pac-10 did not occupy the same type of "gatekeeper" position and, in fact, was governed by the NCAA's eligibility requirements.  
Hall
, 985 F. Supp. at 797.  As such, for the purposes of its decision, the court would assume that Hall would have some likelihood of success in proving that student-athletes were third-party beneficiaries to the contract between the NCAA and all of its members.  However, the court held that Hall had not established that the NCAA had breached the contract and therefore his claim failed.

IHSA is more akin to the NCAA than to the Pac-10 in that IHSA's duty, like that of the NCAA, is to determine the eligibility of every student-athlete.  Therefore, following 
Hall
, we find that the Montses would have some likelihood of success in proving that high school student-athletes were third-party beneficiaries to the contract between IHSA and its member schools.  With that premise, we must then determine whether IHSA breached that contract.

To establish a breach of contract, the Montses must show that IHSA failed to perform a material obligation under the contract.  
Hall
, 985 F. Supp. at 797.  The Montses claimed that Isaac had a contractual right to eligibility based upon IHSA's constitution and bylaws and IHSA's refusal of his eligibility was a breach.

Here, we find that IHSA did not breach its contract, but actually fulfilled its contractual obligations by determining Isaac to be ineligible.  IHSA did exactly what it agreed to by not allowing a student to participate in sports where, according to IHSA's discretion and interpretation of its bylaws, the student was wrongfully influenced and recruited.  The Montses are unable to state a claim for and sustain a third-party beneficiary breach of contract claim against IHSA.

B. Definition and Application of Undue Influence

The Montses next claim that IHSA's definition of "undue influence" is vague and ambiguous, causing the arbitrary and capricious application of the definition.  IHSA's handbook contains its constitution, bylaws, administrative procedures, guidelines, and policies.  It also contains definitions which, according to the handbook, were "adopted as official interpretations of the [Board] under its authority and responsibility as provided in Article 1.420 of the IHSA Constitution."  "Undue influence" is defined as "any influence exerted by school personnel upon a prospective student or a prospective student's family related to athletic participation, potential, or accomplishment."  Although not defined in IHSA's handbook, the definition of "influence" is "to affect or alter by indirect or intangible means; to have an effect on the condition or development of."  Merriam-Webster's Collegiate Dictionary 598 (10th ed. 2000).

After its investigation and hearing, IHSA found that Coach Peterson violated bylaws 3.071 and 3.073, which respectively prohibit the recruitment of students for athletic purposes and prohibit anyone from inducing or attempting to induce a student to attend a member school for the purpose of athletics.  IHSA bylaw 6.010 specifies the penalty for violating any provision of IHSA's constitution, bylaws, or guidelines.  According to bylaw 6.010, IHSA's executive director has the authority and discretion to invoke whatever penalty he feels fit.  Penalties include written warning, corrective action, suspension, and expulsion.  However, if any person is found guilty of exercising "undue influence," he shall be ineligible to coach at a member school for one year, and the student shall be permanently ineligible.  Because IHSA found Coach Peterson exercised "undue influence" over Isaac's transfer to Pontiac, he was ineligible to coach for one year and Isaac was permanently ineligible to participate in athletics at Pontiac.  

The Montses ask us to consider whether IHSA's definition of "undue influence" was vague and ambiguous.  A term is vague or ambiguous if it is subject to more than one interpretation.  
People v. Bailey
, 167 Ill. 2d 210, 229, 657 N.E.2d 953, 962 (1995).  We find that the term "undue influence," as defined by IHSA, is neither vague nor ambiguous.  The definition as a whole and the words used within the definition are clear and definitively reflect IHSA's intent that school personnel are not to influence, to any degree whatsoever, a student's decision to attend a certain school based upon athletics.

Although the definition of "undue influence" is not ambiguous, we must still determine whether IHSA's application of the definition is arbitrary and capricious as the Montses claim.  We first note that 
IHSA is a voluntary association which, in making eligibility determinations, proceeds in accordance with its constitution, bylaws, and rules.  In analyzing any case that scrutinizes a voluntary association's decisions, constitution, bylaws, or rules, a reviewing court must keep the following in mind:

"It is well established that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud or lack of jurisdiction.  Accordingly, it is held that 
mandamus
 will not lie to regulate the affairs of unincorporated societies or associations, at least not in the absence of a permissive statute.  Nor will an injunction be granted where the association is proceeding in accordance with its rules and within the scope of its jurisdiction.  The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion[,] or arbitrariness, be accepted by the courts as conclusive.  Moreover, it is held that the courts will not undertake to inquire into the regularity of the procedure adopted and pursued by such tribunals in reaching their conclusions."  4 Am. Jur. 
Associations and Clubs
 §17, at 466 (1936). 

See also 
Proulx v. Illinois High School Ass'n
, 125 Ill. App. 3d 781, 787-88, 466 N.E.2d 620, 624 (1984); 
Robinson v. Illinois High School Ass'n
, 45 Ill. App. 2d 277, 284, 195 N.E.2d 38, 42 (1963).  

"The decisions of any kind of voluntary society or association in disciplining, suspending, or expelling members are of a quasi-judicial character.  In such cases[,] the courts never interfere except to ascertain whether or not the proceeding was pursuant to the rules and laws of the society, whether or not the proceeding was in good faith, and whether or not there was anything in the proceeding in violation of the laws of the land."  4 Am. Jur. 
Associations and Clubs
 §27, at 472 (1936).  

See also 
Robinson
, 45 Ill. App. 2d at 284, 195 N.E.2d at 42.

Although this well-established principle of law has guided our jurisprudence for many decades, private associations do not have unbridled discretion in making and enforcing their rules.  They cannot expect to conduct their affairs without the fear of a court's watchful eye.  Although they have the discretion to design and implement their own rules and procedures, they must do so in a reasonable, consistent, and fair
 manner.  Private organizations such as IHSA are not untouchable.

It appears from the record that the trial court relied upon the association's "untouchable" status in granting summary judgment in IHSA's favor.  In its order, the trial court stated that "the decision of the IHSA may be deemed harsh, but as noted by the court in 
Proulx
, 'It is well established that courts will not interfere with the internal affairs of voluntary associations.' [
Proulx
, 125 Ill. App. 3d at 787, 466 N.E.2d at 624]."  That decision of this court, however, concerned the validity of a rule (IHSA bylaws 3.012 and 3.015 regarding partic­ipation during a teacher work stoppage) rather than the applicat­ion of a rule, as here, to individual facts.  The trial court's comment indicated that although IHSA's decision did not sit right, the court must not meddle in IHSA's internal affairs.  In a case such as this, further inquiry is required.

When faced with a motion for summary judgment, the trial court must grant a judgment when the pleadings, depositions, and affidavits on file show no genuine issue as to any material fact.  735 ILCS 5/2-1005(c) (West 2000).  A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts.  Although summary judgment is an expeditious method of disposing of a lawsuit, it is a drastic remedy and should be allowed only when the right of the moving party is free and clear from doubt.  
Petrovich v. Share Health Plan of Illinois, Inc.
, 188 Ill. 2d 17, 31, 719 N.E.2d 756, 764 (1999).

Here, we find the trial court erred in granting summary judgment.  We find there were material facts in dispute as to when and how the Montses made the decision that Isaac would attend Pontiac.  These disputed issues should have been tried before the court.  The record includes affidavits from James A. Casson and John Panno who, according to their sworn statements, were approached by the Montses about a move to Pontiac before the meeting with Coach Peterson.  These affidavits alone are sufficient to preclude summary judgment in favor of IHSA.

The trial court's duty was to hear the facts and apply those facts to IHSA's bylaws and rules to determine whether IHSA's actions were arbitrary and capricious.  According to the record before us, Isaac was punished for attending a dinner meeting with his parents and Coach Peterson, a meeting suggested by his former coach.  To Isaac, his parents and former coach were most likely the three authoritative figures in his life at the time.  The fact that the Montses attended a dinner and watched a videotape were not sufficient to determine that Isaac's transfer to Pontiac was influenced by Coach Peterson and was premised upon football.  Obviously, football was a very important aspect in Isaac's life; however, that fact alone does not mean he was recruited or influenced.  We are not convinced that attending a dinner meeting and watching a videotape constitute the exercise of "undue influence" pursuant to IHSA's handbook.  In our opinion, the videotape, which depicted a series of still photos of each senior player when he was a young boy, when he was playing football in high school, and with his mother, did not portray Pontiac's football program as superior to that of any other school.  The videotape had nothing to do with Pontiac's success in football.  It merely showed the camaraderie that the players and the players' families experience.

Nothing in the record definitively indicates that the Montses were influenced whatsoever by Coach Peterson to allow the entry of a summary judgment.  If a recording or transcript of the hearing before IHSA's Board was available, the evidence may have revealed otherwise.  However, without evidence to the contrary, we cannot say that Coach Peterson exercised influence over the Montses in relation to Isaac's transfer to Pontiac or simply answered the parents' concerns expressed to him.  And thus, we cannot say that IHSA was entitled to a judgment as a matter of law.  We therefore find that the trial court's order finding that no material facts remain in dispute and granting summary judgment in favor of IHSA was in error.  Questions of fact remain with regard to the actions and intentions of the parties.  We cannot say that permanently depriving Isaac of eligibility at Pontiac on these facts was proper, and we therefore reverse the trial court's order and remand with directions consistent with the above.

C. Excessive Punishment

The Montses contend that the punishment imposed upon Isaac by IHSA pursuant to bylaw 6.010 was excessive.  Because we have not determined that Isaac was affected by "undue influence," we cannot say whether the punishment imposed was excessive in this particular case.  As stated above, we find error in the trial court's decision that summary judgment was proper when it was not clear that Isaac and his family were influenced to transfer schools by Coach Peterson.

Again, we note that v
oluntary associations have great discretion when conducting their internal affairs, especially when their conduct relates to the interpretation and enforcement of the association's rules and regulations.  
Lee v. Snyder
, 285 Ill. App. 3d 555, 558, 673 N.E.2d 1136, 1139 (1996).  Judicial review of an association's conduct is limited to whether the association exercised its power consistently with its own internal rules and the members' fundamental right to a fair hearing.  
Lee
, 285 Ill. App. 3d at 559, 673 N.E.2d at 1139.

"'In churches, lodges, labor unions, and other like voluntary associations, each person on becoming a member, either by express stipulation or by implication, agrees to abide by all rules and regulations adopted by the organization.  [Citation.]  Courts will not interfere to control the enforcement of by-laws of such associations, but they will be left free to enforce their own rules and regulations by such means and with such penalties as they may see proper to adopt for their government.'"  
Lee
, 285 Ill. App. 3d at 559, 673 N.E.2d at 1139, quoting 
Engel v. Walsh
, 258 Ill. 98, 103, 101 N.E. 222, 223-24 (1913).

There is a basic rule of nonintrusion in the affairs of voluntary associations except in cases of mistake, fraud, collusion, or arbitrariness.  
Lee
, 285 Ill. App. 3d at 559, 673 N.E.2d at 1139.  In section 6.010 of its bylaws, IHSA sets forth the punishment or sanctions for violating any of its rules.  We do not find bylaw 6.010 excessive on its face.

If a student is aware that he or she is being recruited or wrongfully influenced to transfer schools based upon athletics, and allows himself or herself to be so influenced, then the punishment specified in bylaw 6.010 would not be excessive.  However, if based upon the facts, it is not clear whether a student was recruited or wrongfully influenced to transfer schools, if the student was simply a victim of the conduct of two coaches, then the punishment specified in bylaw 6.010 on the student would be excessive.  In other words, to avoid the arbitrary and capricious enforcement of its bylaws, IHSA must examine the facts on a case-by-case basis to determine the intent and knowledge of the student and of school personnel.

In this case, based upon what we have before us, it appears that by attending the dinner meeting with Coach Peterson, Isaac was simply appeasing his parents' concern, involvement, and inquiries as to whether Pontiac would best suit Isaac's needs for his upcoming senior year.  From the facts before us, it did not appear that Isaac was comparing schools or pitting schools against each other to see which would offer him the best situation.  His former coach had already suggested the transfer to Pontiac.

Based upon the facts before us, as we have stated above, we are not certain that "undue influence" was exercised upon Isaac to transfer schools; therefore, we cannot say whether the punishment imposed upon him was excessive.  Should it be determined that Isaac was truly affected by "undue influence" within the meaning of IHSA's rules, procedures, and mission, then the punishment specified in bylaw 6.010 would not be deemed excessive.  We caution IHSA to examine each case carefully to determine the parties' knowledge and intent prior to imposing punishment that would negatively affect a student for the rest of his or her life.

III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings consistent with the above.

Reversed and remanded with directions.

MYERSCOUGH, P.J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent and would affirm the decision of the trial court, upholding the decision of the IHSA. 

It is well established that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud or lack of jurisdiction.  The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion or arbitrariness, be accepted by the courts as conclusive.  
Lee
, 285 Ill. App. 3d at 559, 673 N.E.2d at, 1139; 
Proulx
, 125 Ill. App. 3d at 787-88, 466 N.E.2d at 624.

Lee
 was a contract case, involving a contract between a 12-year-old, his parents, and the Amateur Hockey Association of Illinois.  It is not entirely clear how we have jurisdiction of the present case, which does not involve an action between contracting parties.  See 
Clements v. Board of Education of Decatur Public School District No. 61
, 133 Ill. App. 3d 531, 533, 478 N.E.2d 1209, 1210 (1985) (much uncertainty exists as to the nature of the legal interest which a student has in order to seek relief from the courts against alleged unfairness in the administration of school athletic programs).  Nevertheless, I agree with the majority that the courts should provide some limited review of the decisions of the IHSA.  I agree that the trial court properly considered this case under the rules set out above.

I disagree, however, with the majority's application of those rules, its conclusion that "[w]e are not convinced that attending a dinner meeting and watching a videotape constitute the exercise of 'undue influence' pursuant to IHSA's handbook."  Slip op. at 14.  
The majority ignores the rules it cites and not only conducts a 
de
 
novo
 review of the proceedings before the IHSA Board, but would literally retry the case as if the IHSA proceedings had not occurred.  The majority would simply substitute the courts for the IHSA Board.  See 
Lee
, 285 Ill. App. 3d at 560, 673 N.E.2d at 1140.  Absent fraud or collusion, or that the defendants acted unreasonably, arbitrarily, or capriciously, the IHSA must be permitted to enforce its rules and orders without interference by the courts.  
Robinson
, 45 Ill. App. 2d at 286, 195 N.E.2d at 43.  

There was evidence in the present case that Coach Aubrey at Streator asked the Montses if they would like for him to approach Coach Peterson at Pontiac about the possibility of Isaac playing at Pontiac.  The Montses gave their approval, Coach Aubrey contacted Coach Peterson, and the Montses scheduled a dinner meeting to discuss the possibility of Isaac's transfer to Pontiac.  The dinner meeting took place, Coach Peterson played the videotape, and thereafter the Montses decided to transfer Isaac to Pontiac.  The IHSA was entitled to conclude, based on this evidence, that there was "influence exerted by school personnel upon a prospective student or a prospective student's family related to athletic participation," within the meaning of the IHSA's bylaws.  The IHSA's decision was not unreasonable, arbitrary, or capricious, and there is no evidence of fraud or collusion.  The IHSA's decision must be respected.           

Finally, I disagree with the majority's conclusion that the IHSA's denial of the request for a court reporter was arbitrary.  No one has cited any authority for the proposition that the IHSA was required by its rules or any other regulation to transcribe these hearings.  The hearing before the IHSA Board was not a court proceeding.