# Illinois Official Reports

## Appellate Court

---

**Better Government Ass'n v. Illinois High School Ass'n, 2016 IL App (1st) 151356**

---

| | |
|---|---|
| Appellate Court Caption | BETTER GOVERNMENT ASSOCIATION, Plaintiff-Appellant, v. ILLINOIS HIGH SCHOOL ASSOCIATION and CONSOLIDATED HIGH SCHOOL DISTRICT 230, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-1356 |
| Filed | June 24, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-12091; the Hon. Mary Lane Mikva, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Loevy & Loevy, of Chicago (Matthew Topic, of counsel), for appellant.<br><br>Dykema Gossett PLLC, of Lisle (David J. Bressler and Melanie J. Chico, of counsel), for appellee Illinois High School Association.<br><br>Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, of Arlington Heights (Vanessa V. Clohessy and Jeffrey C. Goelitz, of counsel), for appellee Consolidated High School District 230. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Presiding Justice Reyes and Justice Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1      Plaintiff, Better Government Association (BGA), appeals the circuit court's orders dismissing its complaint alleging that defendants, Illinois High School Association (IHSA) and Consolidated High School District 230 (District 230), violated the Freedom of Information Act (FOIA or Act) (5 ILCS 140/1 (West 2014)). Plaintiff had submitted written requests from defendants seeking all of IHSA's contracts for accounting, legal, sponsorship, and public relations/crisis communications services and all licensed vendor applications for the 2012 to 2013 and 2013 to 2014 fiscal years. Plaintiff contends the circuit court erred in finding: (1) that IHSA was not a subsidiary public body as the term is used in FOIA and (2) that IHSA does not perform a governmental function for member public schools, including District 230, such that the requested records were available to the public *vis-à-vis* District 230 pursuant to section 7(2) of FOIA. Based on the following, we affirm.

¶ 2                                FACTS

¶ 3      On June 5, 2014, BGA submitted a written request to IHSA seeking all of IHSA's contracts for accounting, legal, sponsorship, and public relations/crisis communications services and all licensed vendor applications for the 2012 to 2013 and 2013 to 2014 fiscal years. IHSA responded to the request by stating that it was a nonprofit 501(c)(3) charitable organization that is not subject to FOIA. BGA then submitted a request on July 2, 2014, to District 230 seeking the same records pursuant to section 7(2) of FOIA. District 230 responded by stating that it did not have any of the requested documents in its possession.

¶ 4      BGA filed its one-count complaint for violation of FOIA against defendants on July 23, 2014, requesting that the court declare IHSA a subsidiary "public body" under FOIA; declare IHSA performs a governmental function on behalf of its member schools, including District 230; and order IHSA and District 230 to produce the requested documents.

¶ 5      IHSA responded by filing a section 2-619 motion to dismiss, arguing that it was not subject to the provisions of FOIA because it was neither a public body nor a subsidiary as the terms are used in the Act. To its motion, IHSA attached a copy of its constitution and bylaws, an affidavit submitted by Martin Hickman, and a copy of a September 29, 2010, letter from the public access counselor (PAC) from the Illinois Attorney General's Office.

¶ 6      According to IHSA's constitution, its purpose is to "provide leadership for the development, supervision, and promotion of interscholastic competition and other activities in which its member schools engage." Each year, the member schools adopt IHSA's constitution and bylaws. Pursuant to section 1.300 of the constitution, the administrative authority of IHSA is vested in a board of directors composed of 10 elected members chosen by general membership. Each board member must be a principal of a member school. At least one member of the board is elected from each of the seven divisions of member schools within Illinois. The remaining three board members are elected from the schools at-large. Of those three at-large elected board members, one must be from a private/nonpublic school, one must represent underrepresented genders, and one must represent racial minorities. There is no minimum number of members that must represent public schools. The bylaws provide the rules governing participation by the member schools and students in the designated sports covered by IHSA.

¶ 7    In Hickman's affidavit, he attested that he is the executive director of IHSA, which is a voluntary, unincorporated association consisting of over 800 public and private high schools located throughout Illinois. According to the affidavit, IHSA is a recognized 501(c)(3) charitable organization that files separate tax returns annually. Hickman averred that IHSA does not charge its member schools membership fees or dues[1] and does not charge its member schools entry fees for its events. Instead, IHSA generates revenue based on interscholastic events organized by it and the sponsorships it receives. Hickman attested that the board of directors is composed of elected individual principals and not the member schools. More specifically, if a principal moved schools during his or her elected term, he or she would remain a board member and not be replaced by a different principal from the original school even if the principal switched to a private school from a public school or vice versa. According to Hickman, the board of directors could consist of a majority of private/nonpublic schools. In fact, Division 1, which contained all city of Chicago schools and overwhelmingly was composed of public schools, had two back-to-back elected board members from private schools. Hickman attested that the board of directors' members were not paid a salary or considered employees of IHSA. In addition, Hickman's affidavit provided that the day-to-day operations of IHSA were performed by the executive director and the administrative staff, who were not government employees, were not paid from government funds, were not subject to any state regulations regarding public employees, and were not eligible for any state or local governmental retirement programs or insurance benefits. Instead, Hickman attested that the executive director and administrative staff were employees of IHSA, were paid by IHSA, and were provided benefits solely by IHSA where IHSA had its own federal employer identification number, withheld payroll taxes, and issued W-2 forms annually to its employees. Hickman added that IHSA owned the building housing its offices.

¶ 8    In the September 29, 2010, letter authored by the PAC, the PAC responded to an IHSA denial of a FOIA request. In its responsive letter, the PAC opined that "[t]he IHSA is a private, not-of-profit organization and, thus, does not fall within the definition of 'public body' as defined by Section 2(a) of FOIA. 5/ILCS 140/2(a). For this reason, IHSA is not subject to FOIA."

¶ 9    District 230, in response to BGA's complaint against it, filed a section 2-615 motion to dismiss, arguing that IHSA is not a "public body" under FOIA and District 230 is not alleged to possess the requested records. Moreover, District 230 argued that it should not be forced to try to obtain the records in question because they were not public records of District 230 and were not directly related to any alleged governmental function that IHSA may perform on its behalf.

¶ 10    Following oral argument on the motions, the circuit court granted both IHSA's section 2-619 motion to dismiss and District 230's section 2-615 motion to dismiss. In granting IHSA's motion, the circuit court noted that BGA's failure to present a counter-affidavit challenging the Hickman affidavit caused the facts therein to be admitted. The court also found that statements made by IHSA in the prior case *Hood v. Illinois High School Ass'n*, 359 Ill. App. 3d 1065 (2005), in which IHSA had sought protection under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2002)) as a "local public entity" under that statute, were factual assertions and not evidentiary admissions applicable to the instant case. Finally, after applying the factors of the

_____

[1]The IHSA constitution does permit it to charge dues to its members.

test presented by *Rockford Newspapers, Inc. v. Northern Illinois Council on Alcoholism & Drug Dependence*, 64 Ill. App. 3d 94 (1978), the circuit court determined that IHSA was not a subsidiary public body covered by FOIA. In so doing, the circuit court stated:

> "In terms of [the] nature of [IHSA's] functions, yes, perhaps those could be governmental functions. They could be done by government, perhaps in some states they are. But, you know, education is done by private and public entities, that doesn't make everybody who does education a public actor subject to FOIA. As we all know there are private schools. And there are, as I indicated, a number of private organizations that support the public and private schools and it does not make them all governmental actors.
>
> * * *
>
> This is a function that could be done, as I've said now probably five times, by a public entity or it could be done by a private, not-for-profit association. And [in] this case [it] is being done by a private, not-for-profit association for the benefit of both public and private schools."

Then, in granting District 230's motion, the circuit court held that section 7(2) of FOIA did not apply because IHSA did not perform a governmental function on behalf of District 230. This appeal followed.

¶ 11                                ANALYSIS

¶ 12        Plaintiff contends the circuit court erred in dismissing its complaint where IHSA is a subsidiary public body as the term is used in FOIA and, therefore, is subject to compliance with the Act. Plaintiff additionally contends that IHSA performs a governmental function on behalf of its member schools, including District 230, and, therefore, District 230 was required to produce the requested documents.

¶ 13                        I. Section 2-619 Motion

¶ 14        We first address BGA's challenge to the dismissal of its complaint in favor of IHSA.

¶ 15        A section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2014)) admits the sufficiency of the plaintiff's complaint, but asserts a defense outside the complaint that defeats it. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Specifically, a section 2-619(a)(9) motion, like the one filed by IHSA, permits the involuntary dismissal of the complaint where the claim is barred by an "other affirmative matter." 735 ILCS 5/2-619(a)(9) (West 2014). "When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them [citation], but a court cannot accept as true mere conclusions unsupported by specific facts [citation]." *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31. We review the granting of a section 2-619 motion to dismiss *de novo*. *Id.*

¶ 16        As an initial matter, BGA attacks the adequacy of IHSA's section 2-619 motion, as well as that of the Hickman affidavit, arguing that they do not qualify as an "affirmative matter" capable of defeating BGA's complaint. We disagree. An affirmative matter is:

> " '[A] type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusion[s] of material fact unsupported by allegations of specific fact contained [in] or inferred from the complaint *** [not]

merely evidence upon which defendant expects to contest an ultimate fact stated in the complaint.' " *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 121 (2008) (quoting 4 Richard A. Michael, Illinois Practice § 41.7, at 332 (1989)).

¶ 17    Contrary to BGA's assertion, IHSA's motion sufficiently alleged it was not subject to FOIA as demonstrated by application of the relevant test to be discussed herein and as supported by the documents attached to its motion, which constituted "affirmative matters" capable of defeating the complaint. See *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993) ("[b]y presenting adequate affidavits supporting the asserted defense [citation], the defendant satisfies the initial burden of going forward on the motion"). IHSA's motion and accompanying documents were not merely its version of the facts intended to negate the essential allegations of BGA's cause of action. We, therefore, find that IHSA's motion properly was considered as a section 2-619(a)(9) motion to dismiss.

¶ 18    Turning to the substance of this appeal, the questions presented require this court to apply the well-known rules of statutory construction. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature by applying the plain and ordinary meaning of the language of the statute. *Hamilton v. Industrial Comm'n*, 203 Ill. 2d 250, 255 (2003). When the statutory language is clear, courts must apply the statute as written. *Id.* at 256. However, if a statute is capable of being understood by reasonably well-informed persons in two or more different ways, the statute is considered ambiguous. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). The supreme court has advised:

"If the statute is ambiguous, the court may consider extrinsic aids of construction in order to discern the legislative intent. [Citation.] We construe the statute to avoid rendering any part of it meaningless or superfluous. [Citation.] We do not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. [Citation.]" *Id.* at 440-41.

¶ 19    The Illinois FOIA is based upon a policy of full, complete disclosure regarding the affairs of government and the official acts and policies of public officials and public employees. 5 ILCS 140/1 (West 2014). FOIA provides, in relevant part:

"Restraints on access to information, to the extent permitted by this Act, are limited exceptions to the principle that the people of this State have a right to full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. The provisions of this Act shall be construed in accordance with this principle. This Act shall be construed to require disclosure of requested information as expediently and efficiently as possible and adherence to the deadlines established in this Act." 5 ILCS 140/1 (West 2014).

¶ 20    Section 1.2 of FOIA states that "[a]ll records in the custody or possession of a public body are presumed to be open to inspection or copying." 5 ILCS 140/1.2 (West 2014). Moreover, section 3(a) provides that "[e]ach public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Sections 7 and 8.5 of this Act." 5 ILCS 140/3(a) (West 2014). Section 2 of FOIA defines "public body" as:

"Definitions. As used in this Act:

    (a) 'Public body' means all legislative, executive, administrative, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages,

incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees, or commissions of this State, any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees thereof ***." 5 ILCS 140/2 (West 2014).

This court has held that a subsidiary public body is itself a public body for purposes of compliance with the Act. *Board of Regents of the Regency University System v. Reynard*, 292 Ill. App. 3d 968, 978 (1997).

¶ 21 The question in this case is whether the IHSA constitutes a subsidiary public body. Subsidiary body is not defined in FOIA. In *Rockford Newspapers, Inc.*, however, the Second District articulated a three-part test for determining whether an entity is a "subsidiary body" as the term is used in the Open Meetings Act (5 ILCS 120/1.02 (West 2014)). Because the definition of "public body" is substantially identical in both statutes, our courts have found no reason to distinguish between the statutes. See *Reynard*, 292 Ill. App. 3d at 976; *Hopf v. Topcorp, Inc.*, 256 Ill. App. 3d 887, 893 (1993). We similarly conclude, and the parties agree, that the *Rockford Newspapers* test applies in this instance for determining whether an entity is a subsidiary body as used in FOIA. The *Rockford Newspapers* test instructs courts to consider: (1) whether the entity has a legal existence independent of government resolution; (2) the nature of the functions performed by the entity; and (3) the degree of government control exerted. 64 Ill. App. 3d at 96-97.

¶ 22 A. IHSA's Legal Existence Independent of Government

¶ 23 Turning to the first factor in the *Rockford Newspapers* test, IHSA is a voluntary, unincorporated association of member Illinois high schools, both public and private. It has an independent legal existence separate from its member schools where IHSA has independent standing to sue and be sued. See 735 ILCS 5/2-209.1 (West 2014) ("[a] voluntary unincorporated association may sue and be sued in its own name, and may complain and defend in all actions"); *cf. Jackson v. Village of Rosemont*, 180 Ill. App. 3d 932, 937-38 (1988) (finding that a stadium owned and operated by a municipality was not separate from the municipality). IHSA is an established 501(c)(3) charitable organization recognized by the Internal Revenue Service as a separate legal entity that files its own tax returns and has its own federal employer identification number. Additionally, IHSA maintains its own employees for whom it withholds payroll taxes and issues W-2 tax forms annually. IHSA also owns the building in which its offices are housed. These factors demonstrate that IHSA has a separate legal existence, independent from its member schools or any other public body, which BGA conceded at oral argument in this case. See, *e.g.*, *Rockford Newspapers*, 64 Ill. App. 3d at 96.

¶ 24 B. Nature of the Functions Performed by IHSA

¶ 25 Moving to the second factor in the *Rockford Newspapers* test, there is no question that IHSA is an organization that serves the public body by coordinating sporting events for member high schools and that it enhances the students' educational experience. The question is whether those functions are necessarily governmental.

¶ 26 Courts repeatedly have found that there is no property or liberty interest in interscholastic athletic participation. *Jordan v. O'Fallon Township High School District No. 203 Board of Education*, 302 Ill. App. 3d 1070, 1076 (1999) (citing *Clements v. Board of Education of Decatur Public School District No. 61*, 133 Ill. App. 3d 531, 533 (1985)). "Students can need,

want, and expect to participate in interscholastic athletics, but students are not *entitled* to participate in them. Football is neither an integral part of a quality education nor a requirement under any rule or regulation governing education in this state." (Emphasis in original.) *Id.* Unlike education, participation in athletics is voluntary. Moreover, no matter the potential exclusion from elite competitions governed by IHSA, participation by member schools in the IHSA also is voluntary. IHSA's bylaws do provide a comprehensive framework for both the schools' and the students' participation in IHSA-sanctioned competitions (*e.g.*, eligibility, participation limitations, qualifications of coaches); however, as stated, any school can decide to forego participation in the IHSA to avoid its rules.

¶ 27　　Moreover, each member school runs and supervises its own team for those sports falling within the parameters of the IHSA. Indeed, not all interscholastic athletics are governed by IHSA nor are intramural or club sports and activities. IHSA's reach is limited to those interscholastic sports expressly provided for in its bylaws. Similar to IHSA, but at the collegiate level, the Supreme Court has recognized, within the context of the fourteenth amendment, that the National Collegiate Athletic Association (NCAA) does not enjoy "governmental powers" despite its various rules governing its member schools and the authority it has to sanction its members. *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 196-97 (1988). The mere fact that a private company may be connected with a governmental function does not create a public body where none existed before. *Rockford Newspapers*, 64 Ill. App. 3d at 97 (finding the private, not-for-profit organization funded primarily by government agencies and required to comply with numerous government regulations was not subsidiary body pursuant to the Open Meetings Act).

¶ 28　　Based on the foregoing, we conclude that, although a public body *could* perform the same functions of IHSA in developing, supervising, and promoting interscholastic competitions among its member schools, the private, independent, not-for-profit IHSA does not perform public, governmental functions in this case. *Cf. Reynard*, 292 Ill. App. 3d at 977-79 (finding that the university senate, which was a creation of the school board, was a public body pursuant to the Open Meetings Act and FOIA as it was in charge of determining academic policy for the university and that the senate's council was a subsidiary public body pursuant to the Open Meetings Act and FOIA as a standing committee that advised the senate on academic policies and all policies governing the university's intercollegiate athletic program).

¶ 29　　　　　　　C. Degree of Government Control Exerted Over IHSA

¶ 30　　Applying the third factor in *Rockford Newspapers*, Hickman's affidavit established that IHSA is not owned or controlled by its member schools. As a not-for-profit association, IHSA does not have owners. See, *e.g.*, 805 ILCS 105/106.05 (West 2014) ("A [not-for-profit] corporation shall not have or issue shares. No dividend shall be paid and no part of the money, property or other assets of a corporation shall be distributed to its members, directors or officers ***."). Rather, the IHSA is controlled by its board members. The board is composed of individual principals from the member schools. Of the 10 board seats, 7 represent the 7 divisions of the IHSA and 3, which are elected at-large by the member schools, represent private schools, underrepresented genders, and racial minorities. The at-large member representing private schools need not be the only private school principal elected to the board. In fact, once an individual principal is elected to the board, he or she remains in that position even if he or she changes schools, so long as he or she continues to meet the requirements for

the board seat. See *Rockford Newspapers*, 64 Ill. App. 3d at 96 (organization was run by a board of directors selected pursuant to its own bylaws, not elected or appointed by any government official).

¶ 31 In addition, the Hickman affidavit provided that the day-to-day functioning of IHSA is provided by the executive director and an administrative staff. The executive director and administrative staff are employees of IHSA, not employees of the member schools or any public entity. The executive director and administrative staff are paid by IHSA, are not subject to regulations of public employees, and are not eligible for state retirement or insurance benefits. *Cf. Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 300 (2001) (where the defendant association was considered to be so entwined with the public school officials acting as board members as to be a state actor for purposes of the fourteenth amendment because the public school officials performed all functions but the "purely ministerial acts by which the Association exists and functions in practical terms" and the defendant association's ministerial employees were eligible for membership in the state retirement system like state employees). The Second District articulated in *Rockford Newspapers* that "the independence of both [a] board of directors and [the] employees from direct government control are extremely significant factors." 64 Ill. App. 3d at 96 (the board having had full authority to employ or discharge any employee and employees were not subject to state regulatory practices concerning public employees nor were they eligible for state retirement or insurance benefits). We conclude that these factors demonstrate IHSA is not controlled by a government entity to such a degree that it constitutes a subsidiary public body.

¶ 32 We find further support for our conclusion where IHSA does not receive governmental funding. According to Hickman's affidavit, although the constitution permits IHSA to charge membership dues, IHSA does not, in fact, charge any of its member schools dues and does not charge schools entry fees for its events. *Cf. Brentwood Academy*, 531 U.S. at 299 (wherein the United States Supreme Court found it relevant that the defendant's revenue was composed of membership dues paid by the schools and "gate receipts at tournaments among the member schools"). Instead, IHSA contracts with host schools for use of their facilities and compensates the schools by providing minimum guaranteed fees and splitting any profits in excess of those guarantees. These agreements are extended to both public and private schools. In fact, in the 2013 to 2014 season, IHSA held events at private schools 289 times. Lack of government funding notwithstanding, this court has found that the providing of government funds does not necessarily cause an entity to be characterized as a subsidiary body. See, *e.g.*, *Rockford Newspapers*, 64 Ill. App. 3d at 96 ("[t]he amount or percentage of governmental funding of a private entity should have no bearing on whether that entity is characterized as a subsidiary"); *Hopf*, 256 Ill. App. 3d at 896-97 (a 50% funding of the corporation by the municipality, in and of itself, did not render the corporation a subsidiary body).

¶ 33 In addition, we are not persuaded by plaintiff's argument that the number of statutes aimed at regulating the IHSA demonstrates it is a subsidiary body. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State ***." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974). In *Rockford Newspapers*, the Second District concluded that the private, not-for-profit organization was not a subsidiary body under the Open Meetings Act and cautioned that:

> "Governmental bodies normally contract with private companies to perform services for the public welfare, and these contracts often involve a delegation of some statutory

duties to the private party. For governments to insist upon a voice in the general manner in which these services are carried out is not only normal but may be part of their responsibilities to their constituents. Such general supervision does not transform the supervised company into a subsidiary of the government." 64 Ill. App. 3d at 97.

¶ 34    We recognize BGA's argument that IHSA is bound by its admissions in the previously decided *Hood* case, such that the local governmental entities "own" the association; local governmental control over the organization is pervasive; the business of the association is public business; the IHSA is an agency of the collective schools of Illinois; and employees of the local entities control IHSA's governing body demonstrating that IHSA is enmeshed with and under the control of local government. These statements were made by IHSA in its brief on appeal in the *Hood* case. We acknowledge that "[a]n admission by a party is substantive evidence admissible as an exception to the rule excluding hearsay. Ordinary evidentiary admissions may be contradicted or explained." *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998) (citing Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 802.11, at 616 (5th ed. 1990)). However, we find the challenged statements were not evidentiary admissions providing factual evidence that IHSA is controlled by its member schools. Instead, the challenged statements were legal arguments asserted by IHSA in an effort to establish immunity under the Tort Immunity Act. Whether an entity is controlled or has sufficient public ties to be considered a "local public entity" under the Tort Immunity Act are legal questions. Ultimately, in *Hood*, the circuit court determined that IHSA was not a "local public entity" pursuant to the plain language of the Tort Immunity Act where it was not a not-for-profit *corporation*, but rather a voluntary association. *Hood*, 359 Ill. App. 3d at 1069-70. The *Hood* court also found it relevant that IHSA was not "truly local" in terms of protection under the *Local* Governmental and Governmental Employees Tort Immunity Act. Additionally, and even more telling with regard to the facts of this case, the *Hood* court noted that private schools make up a "significant portion" of the organization "and may play a key role in its decision making." *Id.* at 1070.

¶ 35    We further note that the statements produced in the Hickman affidavit were deemed admitted by the circuit court because BGA did not file a counter-affidavit. See *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 352 (2010) ("[t]he failure to challenge or contradict supporting affidavits filed with a section 2-619 motion results in an admission of the facts stated therein. [Citation.] Nor may a plaintiff simply rely on the allegations in his own complaint to refute a section 2-619 affidavit."). In response, BGA argues it raised sufficient questions of material fact to survive IHSA's motion, relying on IHSA's statements in *Hood*, which we have determined were not evidentiary admissions, but legal arguments. We, therefore, agree with the circuit court that the statements in the Hickman affidavit were admitted. See *id.* at 352-53.

¶ 36    We recognize that the few cases that have considered whether an entity was a subsidiary public body, namely, *Rockford Newspapers*, *Hopf*, and *Reynard*, made their determinations presumably after a period of discovery whereas no discovery was conducted in this case. See *Rockford Newspapers*, 64 Ill. App. 3d at 95 (resolved on summary judgment, silent as to discovery); *Hopf*, 256 Ill. App. 3d at 892-93 (resolved on summary judgment following discovery); *Reynard*, 292 Ill. App. 3d at 971-73 (resolved following a trial on the merits). In this case, however, as stated, the Hickman affidavit statements were unchallenged by BGA

and, therefore, were deemed admitted. See *Piser*, 405 Ill. App. 3d at 352-53. Accordingly, BGA did not raise questions of material fact requiring a period of discovery.

¶ 37    In sum, we find, based on the application of the *Rockford Newspapers* factors, that IHSA is not a subsidiary public body as the term is used in FOIA. We, therefore, conclude that IHSA's section 2-619 motion was granted properly.

¶ 38                                  II. Section 2-615 Motion

¶ 39    We next address BGA's challenge to the dismissal of its complaint in favor of District 230.

¶ 40    A section 2-615 motion to dismiss, like that filed by District 230, tests the legal sufficiency of a complaint. 735 ILCS 5/2-615 (West 2014). "When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them [citation], but a court cannot accept as true mere conclusions unsupported by specific facts [citation]." *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31. We review the granting of a section 2-615 motion to dismiss *de novo*. *Id.*

¶ 41    BGA contends its complaint adequately demonstrated that IHSA performs a governmental function on behalf of District 230 and that the requested records directly relate to that function, thus triggering section 7(2) of FOIA.

¶ 42    Again, we must employ the well-known principles of statutory construction to resolve BGA's contention. As stated, the primary rule of statutory construction is to ascertain and give effect to the intent of the legislature by applying the plain and ordinary meaning of the language of the statute. *Hamilton*, 203 Ill. 2d at 255.

¶ 43    As previously discussed, FOIA requires that a "public body" disclose "public records" upon request, unless the records are exempt. 5 ILCS 140/3(a) (West 2014). FOIA defines "public records" as:

> "all records *** pertaining to the transaction of public business, regardless of physical form or characteristics, having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c) (West 2014).

¶ 44    In 2010, section 7(2) was added to address "public records" that a public body does not physically possess. More specifically, section 7(2) of FOIA provides:

> "A public record that is not in the possession of a public body but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the public body, and that directly relates to the governmental function and is not otherwise exempt under this Act, shall be considered a public record of the public body, for purposes of this Act." 5 ILCS 140/7(2) (West 2014).

¶ 45    BGA sought to obtain the requested IHSA records from District 230 *vis-à-vis* section 7(2). Reading the plain language of section 7(2), as we must, the threshold requirement is that the requested documents qualify as a "public record." The initial question, therefore, is whether the requested records pertained "to the transaction of public business" and were "prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c) (West 2014). We recognize that, in reading section 2(c) in conjunction with section 7(2), the requested documents need not be "in the possession of, or under the control of [the] public body," in this case District 230, so long as the other elements of section 7(2) are satisfied. See 5 ILCS 140/2(c), 7(2) (West 2014).

¶ 46     In its complaint, BGA simply provided a conclusory statement that the requested records were "non-exempt public records." Mere conclusions unsupported by specific facts will not be considered by this court as true. *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31. Instead, we must look to the requested documents themselves. In its FOIA request, BGA requested IHSA's contracts for accounting, legal, sponsorship, and public relations/crisis communications services and all licensed vendor applications for the 2012 to 2013 and 2013 to 2014 fiscal years. Based on our prior analysis of whether IHSA is a subsidiary public body under FOIA, we similarly conclude that the requested records did not pertain to IHSA's "transaction of public business" as IHSA does not engage in public or governmental business. Again, IHSA is a private, independent, not-for-profit that does not perform public, governmental functions. We, therefore, find that BGA did not satisfy the threshold requirement of section 7(2) of FOIA in establishing the requested records were "public records." As a result, we conclude that District 230 was not obligated to obtain and provide the requested documents to BGA.

¶ 47     BGA argues that such a reading would render section 7(2) superfluous in violation of the rules of statutory interpretation. We disagree. As demonstrated, sections 2(c) and 7(2) can be read so as not to render either section superfluous. See *Solon*, 236 Ill. 2d at 440-41. Moreover, section 1.2 of FOIA provides that "[a]ll records in the custody or possession of a public body are presumed to be open to inspection or copying." 5 ILCS 140/1.2 (West 2014). In addition, section 3(a) provides that "[e]ach public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Sections 7 and 8.5 of this Act." 5 ILCS 140/3(a) (West 2014). Reading these sections as a whole in conjunction with the definition of "public record" pursuant to section 2(c) demonstrates that each public body must make the public records within its possession or control available for inspection or copying. Contrary to BGA's argument, section 7(2) then extends a public body's obligation to provide access to public records in the possession of a third party which qualify under the terms of the statute. See 5 ILCS 140/7(2) (West 2014). Simply stated, the statutes can be applied cohesively as written.

¶ 48     In sum, where we have found that the requested records did not meet the definition of "public record" under FOIA, we need not further analyze the elements of section 7(2). We conclude that BGA's claim against District 230 was dismissed properly.

¶ 49                                    CONCLUSION

¶ 50     Based on the foregoing, we affirm the judgment of the circuit court in dismissing BGA's complaint.

¶ 51     Affirmed.